## JOE LIGHTLE v. STATE.

### No. A-493.   Opinion Filed March 21, 1911.

### (114 Pac. 275.)

1. **INTOXICATING LIQUORS—Indictment and Information—Language of Statute.** In a prosecution against a defendant for having in his possession any imitation or substitute for beer, it is not necessary for the state either to allege or prove that such imitation or substitute was intoxicating. To charge the offense in the language of the statute is sufficient.

2. **INTOXICATING LIQUORS—Offenses—Substitute for Beer—Good Faith—Intent.** Where a defendant is being prosecuted for having in his possession a substitute for or imitation of beer with intention of selling the same, it is no defense that the defendant honestly believed that said substitute contained less than one-half of 1 per cent of alcohol.

3. **SAME.** Where a defendant sells or unlawfully handles any prohibited liquors in Oklahoma, he does so at his peril, and he cannot escape punishment by proving that he was informed and

believed that the sale of such liquor was not prohibited by the laws of Oklahoma.

(Syllabus by the Court.)

*Appeal from Wagoner County Court; W. T. Drake, Judge.*

Joe Lightle was convicted of having in his possession a substitute for beer with the intent of selling it, and he appeals. Affirmed.

*S. M. Rutherford,* for appellant.
*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE. In a prosecution against a defendant for having in his possession any imitation or substitute for spirituous, vinous, fermented, or malt liquors with the intention of selling the same, it is not necessary for the state either to allege or prove that such imitation or substitute was intoxicating. It is sufficient if the offense is charged in the language of the statute. This question has been heretofore repeatedly passed upon by this court. It was directly involved in the case of *De Graff v. State,* 2 Okla. Cr. 519, 556, 103 Pac. 538, 552. This court, in discussing this question, said:

"In support of the second ground upon which the court was requested to exclude the evidence introduced, counsel in their brief say: 'It is not charged that "Adam's Special" is intoxicating, that it contains any alcoholic properties; but the testimony establishes the fact that it was not beer. We believe and argue that the offense cannot be constituted without charging and proving the sale of an intoxicant. *State v. May,* 52 Kan. 53, 34 Pac. 407; *State v. Moulton,* 52 Kan. 69, 34 Pac. 412; *Intoxicating Liquor Cases,* 25 Kan. 751, 37 Am. Rep. 284.' In *State v. May,* 52 Kan. 53, 34 Pac. 407, the Kansas court said: 'If the article sold was beer, it was not incumbent on the state, in the first instance, to show that it was intoxicating; but the defendant had a right to show, if he could, that it was not intoxicating. If it was not beer, or any other liquor presumed to be intoxicating, it was incumbent on the state to show in the first instance the intoxicating qualities of the liquor sold.' The other cases cited are from the same court, and follow the May case, so it is seen that under the Kansas statute the sale of intoxicating liquors

is alone prohibited. This is not the case under the Oklahoma statute. Section 1 of article 3 of our enforcement act prohibits the sale of any imitation or substitute for malt liquors which contain as much as one-half of 1 per centum of alcohol, measured by volume, and which is capable of being used as a beverage, so the court did not err in overruling the objection to this testimony upon the objection made. In the case of *Markinson v. State*, 2 Okla. Cr. 323, 101 Pac. 354, in an opinion by Judge Doyle, this court did hold that in prosecutions for the sale of substitutes for liquor, which sale occurred before the passage of the enforcement act, and which was based alone upon the enabling act, copied into our Constitution, it was necessary to prove that such substitutes were intoxicating. This decision was based alone upon the language of our Constitution and has no application to sales of such substitutes sold after the passage of the enforcement act."

This question was again discussed at length by this court in the case of *Moss v. State,* 4 Okla. Cr. 260, 111 Pac. 955. Judge Richardson, speaking for the court, said:

"There is a vast difference between the constitutional provision and the statutory provision in regard to the sale of liquors, and both the constitutional provision and the statutory provision ('Acts 1907-08, p. 603) are in force. Under the former the liquor sold must be intoxicating; the Constitution creates the rebuttable presumption that all beer, ale, and wine are intoxicating, and the courts take judicial notice that alcohol and whisky are intoxicating. The proper allegation in an information drawn under the constitutional provision is that the defendant did barter, sell, give away, etc., intoxicating liquor, naming or describing it. The statutory provision (section 4180, Snyder's Comp. Laws) provides that: 'It shall be unlawful for any person, individual or corporate, to manufacture, sell, barter, give away or otherwise furnish except as in this act provided, any *spirituous, vinous, fermented or malt liquors or any imitation or substitute therefor.'* Under this provision it is necessary neither to allege nor prove that the liquor sold was intoxicating. All that it is necessary to allege is that it was spirituous, vinous, fermented or malt, as the case may be, or that it was an imitation of or substitute for one or the other of those liquors; and proof of that fact will warrant a conviction, and it will be no defense to show that the liquor was not intoxicating. Immediately following that provision of

the statute we find also the further provision: 'Or manufacture, sell, barter, give away or otherwise furnish any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contains as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmicist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States.' This provision is intended to forbid the sale of patent medicines and medicated drinks and compounds which contain alcohol and are capable of being used as a beverage. It has no reference to the provisions immediately preceding it; and the requirement found in this provision that the liquor must contain as much as one-half of 1 per centum of alcohol measured by volume to fall within the inhibition of the statute is not a requirement of the provision prohibiting the sale of spirituous, vinous, fermented, or malt liquors or any imitation thereof or substitute therefor."

The question was again discussed in the case of *Etter v. State,* 4 Okla. Cr. 230, 111 Pac. 957. This court there said:

"The transcript of the record shows that a motion in arrest of judgment was filed, in which the sufficiency of the information was attacked upon the ground that it charged two offenses. The charging part of the information is as follows: '(1) That the said John Etter on said date and in said county and state, then and there being, did then and there wilfully and unlawfully sell, barter, give away, and otherwise furnish to one John Lucky two bottles of "Rochester," the same being a spirituous, fermented, and malt liquor capable of being used as a beverage, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state. (2) That the said John Etter on said date and in said county and state, then and there being, and on the occasion and by the same acts above set forth, did then and there wilfully and unlawfully sell, barter, give away, and otherwise furnish to one John Lucky, a quantity of an imitation and substitute of a spirituous, vinous, fermented, and malt liquor, named "Rochester," capable of being used as a beverage, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state. Vern E. Thompson, County Attorney.' It is seen from this that, while the information did contain two counts, they both relate to the same transaction; the first count charging the sale of two bottles of 'Rochester,' same being a spirituous, fermented, and malt

liquor capable of being used as a beverage, and the second count charging the sale of the same liquor, but alleging that it was an imitation and substitute for spirituous, vinous, fermented, and malt liquor, named 'Rochester.' Both counts of the information are in the language of the statute. They refer to the same transaction, charged but one offense, and the information is therefore sufficient."

It was proven on the trial of this case that the defendant did have in his possession, for the purpose of selling the same, "Amber Mead," and that this "Amber Mead" was a liquor made from malt by the Kansas City Brewing Company, and contained between 2 and 3 per cent. of alcohol. The county attorney attempted to prove that this "Amber Mead" was a substitute for beer, and was being sold as such; but on objection of counsel for the defense he was not permitted to do so. We think that the court erred in excluding this testimony; but it was an error in favor of the defendant. The evidence in the case amply sustains the allegations contained in the information, viz., that this "Amber Mead" was a substitute for beer, and that it came clearly and fully within the provisions of the statute whether it was intoxicating or not, and that appellant had it in his possession with the intention of selling the same. The information in this case is in the language of the statute and is sufficient. Indeed, counsel for the appellant did not seriously contest that proposition in oral argument before the court, but claimed that the court erred in refusing to give the following instruction which was requested by the defendant:

"Gentlemen of the jury, you are further instructed that if you find from the evidence beyond a reasonable doubt that the defendant was misled in the purchase of the beverage he was selling, and that he honestly believed that the beverage contained less than one-half of 1 per cent. of alcohol, and that defendant did think in good faith, and believed, that it contained less than one-half of 1 per cent. then and in that event you should acquit."

The contention of counsel for appellant was that the intent with which an act is done is always material and that no act can constitute a crime unless it is performed with a criminal intent.

The illustration was offered in argument that if A. takes possession of a horse honestly believing it to be his own property, and it afterwards turns out that he was mistaken, and that the horse really belonged to B., that A.'s good faith in taking the horse on a mistaken claim of ownership would be a complete defense to a charge of larceny. This would be true. Why? Because the evil intention with which property is taken is a necessary constituent element of the crime of larceny; but this illustration would have no application to a case coming under what is known as police regulations, which makes it criminal to do a certain act irrespective of the intention with which such act is done. Joyce on Intoxicating Liquors, p. 722, § 680, states the law as follows:

"Where by statute an act is made an offense under the liquor laws without regard to the intent with which it is done, evidence of an intent is not material."

Black on Intoxicating Liquors, p. 489, § 418, is as follows:

"Where a statute commands that an act be done or omitted which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute will not excuse its violation. There is nothing anomalous in this rule. In a great variety of cases of statutory offenses, more especially such as have to do with matters relating to police regulation, the laws impose criminal penalties, irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

See, also, *State v. Hartfiel,* 24 Wis. 61; *People v. Roby,* 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270; *McCutcheon v. People,* 69 Ill. 601; *State v. Kinkead,* 57 Conn. 173, 17 Atl. 855. In *Halstead v. State,* 41 N. J. Law, 552, 32 Am. Rep. 247, the court said:

"There is an undoubted competency in the lawmaker to declare an act criminal, irrespective of the knowledge or motive of the doer of such act."

In *Regina v. Tolson,* 16 Cox's Criminal Cases, 629, the English court said:

"Although *prima facie* and as a general rule there must be

a mind at fault before there can be a crime, it is not an inflexible rule, and a statute may relate to such a subject-matter and may be so framed as to make an act criminal whether there has been any intention to break the law or otherwise to do wrong or not."

Further citation of authorities is unnecessary. Our statute makes it a crime to sell, or to have possession for the purpose of selling the same, any spirituous, vinous, fermented, or malt liquors, or any imitation or substitute therefor, without regard to the intention with which such sale is made. If we were to sustain the contention of appellant, we would not only be going contrary to all of the authorities on the subject of police regula-tions, but we would place it in the power of any man who so desired to set the prohibitory liquor law of Oklahoma at defiance. He could simply say, "I did not know or I had been misinformed as to a matter of fact," and this would grant him perfect immunity from punishment. Every man is bound to take knowledge of the law, and, if he undertakes to sell prohibited liquor in Oklahoma, he does so at his peril; and any guaranty given to him by any brewing company that the liquor which he sells is not prohibited by the laws of Oklahoma is not worth the paper it is written upon. The fact that appellant took a guaranty shows that he knew he was playing with fire. Now that he has been burned, he has no one but himself to blame. His guaranty is worthless, for no guaranty which involves a violation of law is valid. It is time that bootleggers and jointkeepers in Oklahoma understood that subterfuges of this character will not protect them.

We find no error in the record of this trial.

The judgment of the lower court is therefore affirmed.

ARMSTRONG and DOYLE, JUDGES, concur.