## WILLIAM COURY v. STATE.

No. A-3619. Opinion Filed Sept. 26, 1921.
Dissenting Opinion September 29, 1921.
(200 Pac. 871.)

(Syllabus.)

1.    **Intoxicating Liquors—Illegality of Substitute Beverages.** Under the Constitution and statute laws of this state, the sale and keeping for sale of all intoxicating beverages is prohibited. The Legislature, in the exercise of its police power, has the right to prohibit and has prohibited the sale and keeping for sale of wine, ale, beer, and substitutes therefor, not necessarily intoxicating.

2.    **Same—Sale of Nonintoxicating Apple Cider—Whether Cider Intoxicating a Jury Question.** In this state the sale and keeping for sale of nonintoxicating apple cider is permitted, and it is expressly excluded from the provisions of the statute relating to beverages containing in excess of one-half of 1 per cent. of alcohol. Unlike the several other beverages named in section 3605, Rev. Laws 1910, the question of whether or not any particular apple cider is in fact intoxicating, by the exception provided in section 3606, is a question of fact for the jury, and such exception takes it out of the police regulations of section 3605.

3.    **Same—Criminal Intent a Jury Question.** Where there is substantial positive evidence showing that the accused sold the apple cider in good faith, believing that it was nonintoxicating, the question of criminal intent becomes an issue in the case, under the provisions of subdivision 5 of section 2094, Rev. Laws 1910.
      Matson, J., dissenting.

Appeal from County Court, Woods County; R. M. Chase, Judge.

William Coury was convicted of knowingly keeping in his possession apple cider, with the intention of wrongfully selling or giving away the same, and was sentenced to pay a fine of $250, and to confinement in the county jail for 45 days, and he appeals. Reversed and remanded.

E. W. Snoddy and J. P. Grove, for plaintiff in error.

S. P. Freeling, Atty. Gen., and W. C. Hall, Asst. Atty. Gen., for the State.

BESSEY, J.  On the 1st day of May, 1919, William Coury was convicted of the crime of knowingly keeping in his possession 20 gallons of a certain intoxicating compound and liquor, which the proof shows was apple cider, with the intention of wrongfully selling, bartering and giving away the same.  His punishment was assessed at a fine of $250, and confinement in the county jail for a period of 45 days.  From the verdict and judgment he appeals.

For convenience in this opinion, the appellant, William Coury, will be designated as the defendant.  The conviction and judgment of sentence imposed upon the defendant was based on a charge filed on March 15, 1919, by information signed by the county attorney of Woods county, the substance of the charging part being as follows:

"That on the 12th day of March, 1919, the above-named defendant, William Coury, did willfully, wrongfully, unlawfully, feloniously, and intentionally have and knowingly keep in his possession, for and with the intention of wrongfully selling, bartering and giving away the same, about 20 gallons of a certain compound and liquor, the exact nature of which is to your informant unknown, and cannot therefore be herein stated; which said gallons of said compound and liquor was then and there intoxicating, and contained more than 4 per cent., measured by volume, of alcohol, and was capable of being used and was used as an intoxicating beverage, the sale of which alcoholic compound and liquor above stated being prohibited by the laws of the state of Oklahoma."

The testimony discloses that the defendant was a naturalized Syrian, unable to read or write the English language; that he had been for some years engaged in a general mercantile business in the town of Waynoka, having one of the leading stores in that town; that besides this mercantile business he was the owner of valuable town property in Waynoka, and of a valuable farm in the country nearby; that for a period of about 2½ years prior to this time he had

been dispensing soft drinks from a soda fountain in his store, and among other beverages sold apple cider, purchased from the Clarksville Cider Company, of St. Louis, Mo., under a written guaranty from them that the cider was nonintoxicating, and not subject to an internal revenue tax. The defendant claimed that the cider was in fact nonintoxicating and offered in evidence the guaranty from the cider company. As evidence of good faith the defendant further claimed that, upon the question of whether or not it would be permissible for him to sell this cider, he had made inquiry of certain representatives of the sheriff's office and had been advised that it would be all right for him to do so. This, however, was denied by the representatives of the sheriff's office.

A number of witnesses testified that at various times they had purchased and drunk of this cider, and that it was not intoxicating; others testified that if drunk in sufficient quantities it would intoxicate.

On the night of March 12, 1919, the sheriff and two of his deputies, Johnson and Montgomery, went to Waynoka to meet another deputy, Wolcott; they then went to the home of the defendant at about midnight, woke him up, and told him they wanted him to go and get them some of the cider he was selling. The defendant dressed, and went with them to his store and gave them a jug full of the cider from an open barrel from which he had been selling. These deputies, or some one of them, placed this jug of cider in an automobile in which they were traveling, and took it to Alva with them. At a later date, Deputy Montgomery testified, he took this sample of cider to an expert chemist, Mr. Percival, of the State Normal School at Alva, for analysis. The sample was not sealed, or in any way marked for identification until after the analysis was made, which analysis showed that the cider contained more than 4 per cent. of alcohol, measured by volume.

It was the contention of the defendant that, if this analysis was correctly made, and the cider was in fact intoxicating liquor, the defendant had no knowledge of the fact, and that the sales made by him were innocently made, without negligence or culpable criminal intent; and that the defendant did not feloniously, intentionally, and knowingly have and keep in his possession, with the intent of wrongfully selling, bartering, and giving away, the cider in question, as charged in the information.

Upon that question the court submitted the following instructions:

"It is the theory of the defense that the liquor taken from the defendant, William Coury, and for the possession of which he is charged, was pure and unadulterated apple cider, and for that reason it was not a violation of the law to have possession of same with the intent to sell the same. Upon this branch of the case you are instructed that it is not a violation of the law for the defendant to have in his possession, for the purpose of selling it, pure and unadulterated apple cider that is nonintoxicating; that if the cider in question was fermented, and had reached such state of fermentation that it contained a sufficient percentage of alcohol to render the same intoxicating, then the defendant would not have the right to have the same in his possession with intent to sell, give away, or otherwise furnish to others; and as to whether or not the cider in question was an intoxicating liquor is question of fact for the jury; and unless jury are satisfied beyond a reasonable doubt, after a careful consideration of all the evidence in the case, that the cider in question was an intoxicating liquor within the meaning of the law, and capable of being used as an alcoholic beverage, you must acquit the defendant."

"You are instructed that intoxicating liquor, within the meaning of the law, is such liquor as is intended for use as a beverage and is capable of being so used, which contains alcohol either obtained by fermentation or by the additional

process of distillation in such proportion that it would produce intoxication when taken in such quantities as may practically be drunk; and you are further instructed that by reason of the statute the Legislature has fixed the amount of alcohol necessary for such liquor to contain to render it intoxicating at one-half of 1 per cent., measured by volume; and in this case, if you find that the liquor in question contained more than one-half of 1 per cent. of alcohol measured by volume, then you would be justified in finding that such liquor was an intoxicating liquor, within the meaning of the law."

The defendant requested, among others, the following instructions:

"You are further instructed that the defendant had the lawful right to keep for sale, within this state, and sell, apple cider, if the same was manufactured either in this state or elsewhere from the unadulterated juice of apples, even though the same contained more than one-half of 1 per cent. of alcohol, measured by volume, unless the state proves by the evidence beyond a reasonable doubt that the alcohol, if any, was placed therein by or for the defendant."

"The jury is instructed that the information in this case charges the defendant with knowingly keeping for sale a certain compound, capable of being used as a beverage, and containing about 4 per cent. of alcohol, measured by volume, and the jury are instructed that, if they believe from the evidence that the defendant in good faith kept for sale and sold only apple cider of the character permitted by the laws of this state, that then he did not knowingly and unlawfully sell the same; and your verdict should be not guilty."

The charging part of the information, in part, is in the language of section 3605, R. L. 1910, which section is as follows:

"Misdemeanor to Manufacture, Sell or Furnish Liquor. It shall be unlawful for any person, individual, or corporate, to manufacture, sell, barter, give away or otherwise furnish except as in this chapter provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substi-

tute therefor; or to manufacture, sell, barter or give away or otherwise furnish any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per cent. of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; or to ship or in any way convey such liquor from one place within this state to another place therein except the conveyance of a lawful purchase as herein authorized; or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card price list, advertisement or otherwise, or to distribute, publish, or display any advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnished, or to have the possession of any such liquors with the intention of violating any of the provisions of this chapter. A violation of any provisions of this section shall be a misdemeanor, and shall be punished by a fine of not less than fifty dollars nor more than five hundred dollars, and by imprisonment for not less than thirty days nor more than six months: Provided, however, that the provisions of this chapter shall not apply to the manufacture and sale of unfermented cider and wine made from apples, grapes, berries or other fruit grown in this state, and to the use of wine for sacramental purposes in religious bodies." Rev. Laws 1910, § 3605.

"Sale of Apple Cider Lawful. It shall be lawful to sell in this state apple cider manufactured either within or without the state from the unadulterated juice of apples, if the same is of such character as not to be subject to a special tax under the internal revenue laws of the United States, and shall comply with the requirements of the pure food laws of the United States and of this state." Rev. Laws 1910, § 3606.

In this state the manufacture and sale of all intoxicating beverages, of every kind and character, is prohibited by the Constitution. To guard against artifice and fraud, the Legislature, in the exercise of its police power, has made the

traffic illegal in certain other beverages not necessarily in-toxicating, such as ale, wine, beer, near beer and substitutes therefor.

Section 3605, quoted above, is a negative statute, a "thou shalt not" statute, a prohibitory statute relating to the police powers of the state, affecting the prohibition provisions of our Constitution. Section 3606 following, which should be read and considered along with section 3605, unlike the latter, is an affirmative statute, a declaratory statute, explaining that apple cider may or can be kept for sale within the meaning of the Constitution, if such cider be nonintoxicating, even though the alcoholic content might be more than one-half of 1 per cent. Section 3606, excepting apple cider from police regulations imposed against ale, wine, beer, near beer, and substitutes therefor, is a permissive statute, and is not, in a true sense, a police regulation, but an exemption or an exception, taking it out of such regulations.

Construing the two sections last quoted, together with other parts of our prohibitory laws, we conclude that it was the intention of the Legislature to prohibit the sale and disposal of wines, ale, beer, and substitutes known as near beer, containing more than one-half of 1 per cent. of alcohol, measured by volume, but it was the intention of the Legislature to except cider from such provision, making it a question of fact, for the jury to determine whether or not any particular cider, sold or kept for sale, contained sufficient alcohol to make it intoxicating when used as a beverage. To hold otherwise would be to hold for naught and make nugatory section 3606, quoted above.

Unlike the statutes of most other states, our statutes, in section 2094, R. L. 1910, provide that all persons are capable of committing crimes except those belonging to certain classes, and in subdivision 5 of said section except "persons who com-mitted the act, or made the omission charged, under an

ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse. from punishment for its violation."

As a general rule, a reasonable and bona fide belief in the existence of facts which, if they did exist, would render an act innocent is a good defense, but there are apparent and real exceptions to this rule. Clark on the Law of Crimes (2d Ed.) p. 100; 16 Corpus Juris, 84-86; 8 R. C. L. 60. In Texas, prior to the adoption of the Penal Code of 1895, in cases involving a violation of the local option laws of that state, it was held in a number of cases that they who sell liquor must know at their peril whether it is intoxicating, and if it is intoxicating, no matter if the accused is ignorant of the fact, he is deemed guilty of a violation of the law. Later, article 46 of the Penal Code of 1895 provided:

"No mistake of law excuses one committing an offense; but if a person laboring under a mistake, as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense."

In Patrick v. State, 45 Tex. Cr. R. 587, 78 S. W. 947, the court held that, if a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal, he is guilty of no offense, and that this provision of the statutes was applicable to a violation of the local option laws. This case expressly overruled whatever might have been held by courts to the contrary prior to that time upon that point.

In another case, where the accused was charged with unlawfully selling a bottle of intoxicating liquor known as "Frosty," he testified that he had been informed that it was perfectly harmless, and that he would not have sold it if he had believed it intoxicating, and asked for a charge submitting the mistake of fact to the jury; held, that such an instruction should have been given. Mayne v. State, 48 Tex.

Cr. R. 93, 86 S. W. 329; Uloth v. State (Tex. Cr. App.) 87 S.
W. 822; McRoberts v. State, 49 Tex. Cr. R. 288, 92 S. W.
804; Walker v. State, 50 Tex. Cr. R. 495, 98 S. W. 843.

We have been unable to find any other appellate court
decisions construing statutes like our own, touching on the
good faith, ignorance, or mistake of fact of the accused
charged with illegal possession or disposal of intoxicating
beverages. By the great weight of authority in states having
no statute similar to ours on criminal intent, it has been held
that criminal intent or guilty knowledge is not an essential
element of the violation of a criminal statute enacted in the
exercise of the police powers of the state. 8 R. C. L. 62, §
12; Troutner v. State, L. R. A. 1916D, 266, notes and cases
cited.

Touching the sale of apple cider in which the alcoholic
content is a matter of dispute, we would be inclined to fol-
low the majority rule on the question of guilty knowledge or
intent if our statutes were silent on that point, but we do not
feel justified in reading out of the statutes, by judicial con-
struction, provisions so plain and unequivocal as set out in
section 2094, subd. 5, R. L. 1910, and section 3606, before
quoted.

To us it seems that the Legislature intended to take the
question of intent out of the statute so far as ale, wine, beer,
and beverages known as near beer are concerned, because the
statute has arbitrarily fixed the amount of alcoholic content
permissible in such beverages as one-half of 1 per cent., meas-
ured by volume, in positive prohibitive terms, and that the
Legislature intended that any person selling these beverages
containing more than one-half of 1 per cent., of alcohol did
so at his peril, irrespective of his knowledge or intent to vio-
late the law. But by the terms of section 3606, apple cider
is not classified with ale, beer, wine, and near beer, or sub-
stitutes therefor. The Legislature, by arbitrarily prohibit-

ing the sale or the knowingly keeping for sale of beverages not necessarily intoxicating, doubtless intended to cut out or make difficult the sale of such beverages of doubtful or unknown alcoholic content, and so arbitrarily fixed the content permissible, to prevent fraud and imposition by the sale of substitutes for known alcohol beverages. All such beverages are by law made contraband—outlawed; but for some reason the Legislature excepted from this list nonintoxicating apple cider, and affirmatively authorized its sale, and in that sense eliminated it from police regulations.

In some instances the doing of a prohibited act constitutes a crime, irrespective of the moral turpitude or purity of the motive, as the case may be, or of ignorance or mistake of fact. When the prohibition in a statute against doing a certain act or series of acts is couched in general terms, courts have often injected into the statute a proviso that the denoted act shall be done from a guilty mind. These two classes of cases, diverging as they do, and seemingly standing apart from each other, may at first view appear to be irreconcilable in point of principle; nevertheless, such is not the case. They all rest upon one common ground, and that ground is the legal rules of statutory construction. Each set of cases is or should have been the result of the judicial ascertainment of the mind of the Legislature in the given instance. And it will be found that in the considered adjudications this inquiry has been the judicial guide. Naturally, in such an inquiry the decisions have fallen into two classes, because there have been two cardinal considerations of directly opposite tendency influencing the minds of judges; the one being the injustice of punishing unconscious violations of law, and the other the necessity, in view of public utility, of punishing at times some of that very class of offenses. This difference in construction may be seen in the way the courts construe the word, "knowingly" when used in statutes which penalize a person who

knowingly does something.   The word is sometimes construed to be used in the sense of "intentionally", in which cases it must be made to appear that the party charged was aware of the illegality of his conduct. A more general construction is that the word so employed imports a knowledge of the essential facts from which the law presumes a knowledge of the legal consequences arising therefrom. 8 R. C. L. 62,63.

In this case it is charged that the defendant feloniously and intentionally had and knowingly kept this cider, with the intent of wrongfully selling the same, which, to us, considered in connection with our statute on criminal intent, indicates that a culpable, guilty knowledge is an essential ingredient of the crime charged.  Why apple cider has been placed in a different class from ale, wine, beer and substitutes therefor we do not know, but the classification is properly for the Legislature, and not for the courts.

In the case of Lightle v. State, 5 Okla. Cr. 263, 114 Pac. 277, involving guilty intent and purpose in the sale of malt beverage known as "Amber Mead", without commenting on our statute on guilty intent, the learned Judge Furman said:

"The contention of counsel for appellant was that the intent with which an act is done is always material, and that no act can constitute a crime unless it is performed with a criminal intent.   The illustration was offered in argument that if A. takes possession of a horse honestly believing it to be his own property, and it afterwards turns out that he was mistaken, and that the horse really belonged to B., that A.'s good faith in taking the horse on a mistaken claim of ownership would be a complete defense to a charge of larceny.  This would be true.   Why?   Because the evil intention with which property is taken is a necessary constituent element of the crime of larceny; but this illustration would have no application to a case coming under what is known as police regulations, which makes it criminal to do a certain act, irrespective of the intention with which such act is done."

In the Lightle Case the beverage was a near beer, and the statute fixes the maximum alcoholic content allowed, and applying the rule of statutory construction above stated, the innocent intent of a person vending such substitute would be immaterial, and not a proper issue in the case. But, as we have seen, this condition would not apply to apple cider, for the reason that the Legislature has placed apple cider in a class by itself, leaving the question of its alcoholic content and intoxicating properties a question of fact in each particular case, to be determined by the jury. To make the keeping of apple cider for sale illegal it must in fact be intoxicating, and if the defendant in this case honestly believed, either from the guaranty of the vendors or for other good and sufficient reasons, that this particular cider was nonintoxicating, under the provisions of subdivision 5, § 2094, R. L. 1910, the defendant was entitled to have the question of guilty knowledge submitted to the jury under proper instructions.

For the failure to submit this issue to the jury the cause is reversed and remanded.

DOYLE, P. J., concurs.

MATSON, J. (dissenting.) I cannot concur in the application made in the majority opinion of section 2094, Revised Laws 1910, to a purely police regulation. Such an application is opposed to the views expressed by the Supreme Court of the Territory in Garver v. Territory, 5 Okla. 342, 49 Pac. 470, wherein it is said:

"A demurrer to the indictment was duly filed, and counsel insist that such demurrer should have been sustained, because the indictment failed to aver that the negligent acts of Garver, which constitute the offense, and which are set out in the indictment, were not done or committed under an ignorance or mistake of fact; and in support of this contention

cite the fifth division of section 2, art. 2, p. 424, Statutes of 1893. The section in which this subdivision is found, together with the explanatory provision of the section found at the beginning thereof is as follows: All persons are capable of committing crimes, except those belonging to the following classes. * * *

" 'Fifth. Persons who committed the act or made the omission charged under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violation.'

"It is contended that the statute applies to the charge contained in the indictment against Garver, and that an omission to negative the exception makes the indictment bad on demurrer; that the statute has a general application to all classes of crimes, and that, if the defendant is guilty, he must come within the excepting clause. * * * As we view this law it is of that class of prohibitive statutes which are designed for the protection of the public, such, for instance, as statutes which prohibit the sale of intoxicating liquors without a license, or to prohibit such sale to minors, or prohibit the sale of adulterated goods, or which prohibit sexual intercourse with a girl under 16 years of age, or keeping a house of ill fame, or bigamy, and other statutes of like character."

Such an application is also in principle opposed to the view expressed by this court in Lightle v. State, 5 Okla. Cr. 259, 114 Pac. 275, wherein it is held:

"Where a defendant sells or unlawfully handles any prohibited liquors in Oklahoma, he does so at his peril; and he cannot escape punishment by proving that he was informed and believed that the sale of such liquor was not prohibited by the laws of Oklahoma."

In the body of the opinion it is said:

"The information in this case is in the language of the statute, and is sufficient. Indeed, counsel for the appellant did not seriously contest that proposition in oral argument before the court, but claimed that the court erred in refusing

to give the following instruction which was requested by the defendant: 'Gentlemen of the jury, you are further instructed that if you find from the evidence beyond a reasonable doubt that the defendant was misled in the purchase of the beverage he was selling, and that he honestly believed that the beverage contained the less than one-half of 1 per cent. of alcohol, and that defendant did think in good faith, and believed, that it contained less than one-half of 1 per cent., then and in that event you should acquit.'

"The contention of counsel for appellant was that the intent with which an act is done is always material, and that no act can constitute a crime unless it is performed with a criminal intent. The illustration was offered in argument that if A. takes possession of a horse honestly believing it to be his own property, and it afterwards turns out that he was mistaken, and that the horse really belonged to B., that A.'s good faith in taking the horse on a mistaken claim of ownership would be a complete defense to a charge of larceny. This would be true. Why? Because the evil intention with which property is taken is a necessary constituent element to the crime of larceny; but this illustration would have no application to a case coming under what is known as police regulations, which makes it criminal to do a certain act irrespective of the intention with which such act is done. Joyce on Intoxicating Liquors, p. 722 § 680, states the law as follows: 'Where by statute an act is made an offense under the liquor laws without regard to the intent with which it is done, evidence of an intent is not material.'

"Black on Intoxicating Liquors, p. 489, § 418, is as follows: 'Where a statute commands that an act be done or omitted which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute will not excuse its violation. There is nothing anomalous in this rule. In a great variety of cases of statutory offenses, more especially such as have to do with matters relating to police regulation, the laws impose criminal penalties, irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.'

"See, also, State v. Hartfiel, 24 Wis. 61; People v. Roby, 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270; McCutcheon v. People, 69 Ill. 601; State v. Kinkead, 57 Conn. 173, 17 Atl. 855.

"In Halstead v. State, 41 N. J. Law, 552, 32 Am. Rep. 247, the court said: 'There is an undoubted competency in the lawmaker to declare an act criminal, irrespective of the knowledge or motive of the doer of such act.'

"In Regina v. Tolson, 16 Cox's Criminal Cases, 629, the English court said: 'Although prima facie and as a general rule there must be a mind at fault before there can be a crime, it is not an inflexible rule, and a statute may relate to such a subject-matter and may be so framed as to make an act criminal whether there has been any intention to break the law or otherwise to do wrong or not.'

"Further citation of authorities is unnecessary.  Our statute makes it a crime to sell, or to have possession for the purpose of selling the same, any spirituous, vinous, fermented, or malt liquors, or any imitation or substitute therefor, without regard to the intention with which such sale is made. If we were to sustain the contention of appellant, we would not only be going contrary to all of the authorities on the subject of police regulations, but we would place it in the power of any man who so desired to set the prohibitory liquor law of Oklahoma at defiance.  He could simply say, 'I did not know or I had been misinformed as to a matter of fact,' and this would grant him perfect immunity from punishment. Every man is bound to take knowledge of the law, and, if he undertakes to sell prohibited liquor in Oklahoma, he does so at his peril; and any guaranty given to him by any brewing company that the liquor which he sells is not prohibited by the laws of Oklahoma is not worth the paper it is written upon.  The fact that appellant took a guaranty shows that he knew he was playing with fire. Now that he has been burned, he has no one but himself to blame.  His guaranty is worthless, for no guaranty which involves a violation of law is valid."

It is also opposed in principle to the views expressed by the majority of the appellate courts of the United States, of

which the case of Haynes v. State, 118 Tenn. 709, 105 S. W. 251, 13 L. R. A. (N: S.) 559, 121 Am. St. Rep. 1055, 12 Ann. Cas. 470, is an example, and so aptly states the reasons for not applying the principle, ignorantia facti excusat, to statutes of this kind, and in that connection it is said:

"The second error assigned is to the exclusion by the trial judge of the testimony of Ode Smith, a salesman for the Dyersburg Wholesale Company, who sold the cider to plaintiff in error. The following is the excluded testimony. 'When I sold this cider to W. G. Haynes, I represented and guaranteed that it contained no alcohol and would not intoxicate.' He further testified, which was excluded, that he sold the cider to the general trade; had eight or ten customers in Lauderdale county who buy the cider; that he never knew or heard of any complaint by any customer handling this cider, except in this case.

"The following is our legislation on the subject (Shannon's Code, § 991): 'The right to sell spirituous, vinous, or fermented liquors is a taxable privilege in the sense of the twenty-eighth section of the second article of the Constitution.' Shannon's Code, § 6795: 'It shall not be lawful for any person to sell or tipple any intoxicating liquors, including wine, ale and beer, as a beverage, within 4 miles of any schoolhouse,' etc.    Acts 1899, p. 309, c. 161, § 1: 'That any person or persons selling, or aiding in selling in any way whatever, intoxicating liquors, without a license required by law, shall be guilty of a misdemeanor,' etc.

"The court charged the jury on the subject as follows: 'What is meant by intoxicating liquors is anything that will intoxicate, and it does not make any difference by what name it is called. If Mr. Haynes sold to Luther Vaughan the stuff of any kind that intoxicated him, or that was intoxicating, you should convict.'

"Defendant disclaims knowledge of the intoxicating character of the cider. His counsel urges that it is a fundamental principle of criminal law that there must be a criminal intent of the mind, coupled with the act, in order to constitute a

crime. He cites the case of Farrell v. State, 32 Ohio St. 456, 30 Am. Rep. 614, decided by the Supreme Court of Ohio. In that case the defendant had been selling bitters, and was indicted for selling intoxicating liquors. The court says: 'In such case the maxim of the criminal law, "Ignorantia facti excusat," applies to his case. The excusing principle of this maxim applies with great force where the business is recognized as lawful, and a transaction in its prosecution only becomes criminal when it is carried on with a purpose to violate the law. To give this maxim practical effect in a proper case is but an assertion of natural justice, for the reason that to render an act criminal the intention with which it is done must be so—the will must concur with the act. To make a transaction criminal, there must be both will and act entering into the transaction.'

"The opinion in that case was by a divided court; and, even had it been otherwise, it is not sound in principle, and is contrary to the weight of authority in this and other states. It is the sale of intoxicating liquors without license which the statute prohibits, and it is unlawful to sell intoxicating liquor of any character without license. This being so, the seller must find out at his peril whether the liquor he proposes to sell is intoxicating or not. Guilty knowledge is not by the statute made an ingredient of the offense.

"Quite a number of authorities might be cited in support of this. In the case of State v. Hartfiel, 24 Wis. 60, it is held that the sale of intoxicating liquors to a minor is an offense under the statute, though the vendor did not know that the purchaser was a minor. The court in that case says: 'The words "knowingly" or "willfully," or other words of equivalent import, are omitted from the statute, and the offense is made to consist solely in the fact of a sale of intoxicating liquors or drinks to a minor.'

"Numerous authorities could be cited to the effect that where a statute commands that an act be done or omitted, which in the absence of such a statute might have been done or omitted without culpability, ignorance of the * * * * statute will not excuse violation. 3 Greenleaf on Ev. § 21;

Barnes v. State, 19 Conn. 398; Com. v. Mash, 7 Metc. (Mass.) 472; Com. v. Boynton, 2 Allen (Mass.) 160; Merrick v. Plumley, 99 Mass. 567.

"In Ulrich v. Com., 6 Bush (Ky.) 400, it is said: 'It is as incumbent on the vendor of liquor to know that his customer labors under no disability as it is for him to know the law, and his ignorance of neither will excuse him.'

"In the case of Com. v. Boynton, * * * cited supra, it is said: 'The court are of the opinion that the sale of intoxicating liquors, in violation of the statute prohibition, is not one of those cases in which it is necessary to allege or prove that the person charged with the offense knew the illegal character of his act, or in which a want of such knowledge would avail him in defense. If the defendant purposely sold the liquor, which was in fact intoxicating, he was bound at his peril to ascertain the nature of the article which he sold. Where the act is expressly prohibited, without reference to the intent or purpose, and the party committing it was under no obligation to act in the premises unless he knew that he could do so lawfully, if he violates the law, he incurs the penalty. The salutary rule that every man is conclusively presumed to know the law is sometimes productive of hardship in particular cases; and the hardship is no greater where the law imposes the duty to ascertain the fact.'

"It is said in 1 Wharton, Cr. Law, § 88: 'It is no defense (for instance) to an indictment for keeping or selling adulterated or intoxicating liquors, that the defendant did not believe them to be intoxicating or adulterated. So, on an indictment for selling adulterated milk, the defendant is not protected by ignorance of the adulteration, or even by belief that the milk was pure; and the same rule applies to indictments for selling other deleterious drinks. In several states, selling intoxicating liquors to minors is indictable by statute, and in such cases also arises the question whether the defendant knew that the vendee was a minor. Here, again, we have the rule before us applied; it having been repeatedly held that, in cases in which knowledge is not part of the statutory offense, ignorance in this respect, coupled with an hon-

est belief that the vendee was of full age, is not a defense. And the same rule applies to all cases of dealing illegally with minors. It is also no defense to an indictment for selling to persons of intemperate habits that the defendant did not know that the vendee was of intemperate habits; though it is otherwise when the statute makes the offense to be selling to persons of known intemperate habits, in which case knowledge is an ingredient of the prosecutor's case.'

"In 2 Wharton, Cr. Law, § 1507, after discussing the same question, it is said: 'But to such defense the answer has been already given that when a specific act is made by the law indictable, irrespective of the defendant's motive or intent, his belief that he was right in what he did, based on a mistake of fact, is no defense. Eminently is this the case with regard to intoxicating drinks.'

"In 17 Encyc. Pl. & Pr. p. 384, it is said: 'In all prosecutions for violations of the liquor laws, the defendant's ignorance of the intoxicating properties of the liquors sold or kept for sale constitutes no defense. He is bound at his peril to know whether the liquors are intoxicating.'

"In Atkins v. State, 95 Tenn. 474, 32 S. W. 391, it is held that one believing that he has a lawful right to operate a gambling contrivance is no defense for violation of the laws against gaming.

"In Moore v. State, 96 Tenn. 544, 35 S. W. 556, the trial judge charged the jury that the statute against the sale of intoxicating liquors was intended to and did prohibit the sale as a beverage of wine, ale, and beer, and also all other liquors which were intoxicating whether called beer, wine, whisky, ale, cider, hop tonic, or whatever name they be known by, and that defendant could not lawfully sell hop tonic or cider within 4 miles of a schoolhouse where a school is kept, if such hop tonic or cider was intoxicating, and would make men drunk, and was sold as a beverage, and was not in an incorporated town.'

" 'This,' says the court, through Coldwell, J., 'is a sound interpretation of the law applicable to the case before the court—a construction manifestly in accord with the contemplation of the Legislature.'

"So it can make no difference under what guaranty plaintiff in error purchased the cider. If he sells it, he must know at his peril whether it is intoxicating or not; and his belief that it was not, however honest, is no excuse."

The majority holding is in my opinion opposed to the purpose and intention of the people in adopting the constitutional provision. It is also opposed to the intention of the Legislature in enacting laws to make effective such constitutional provision.

Further, it permits ignorance of the kind of cider which may be lawfully sold under the provisions of section 3606, Revised Laws 1910, to be interposed as a defense to the possession with intent to sell of intoxicating apple cider. A consideration of the provisions of section 3606, supra, clearly indicates that it was not the intention of the Legislature to make lawful the sale of hard or intoxicating apple cider, as the Constitution specfically prohibited the sale of intoxicating liquors of any kind. Therefore, in my opinion, the result of the conclusion reached in the majority opinion is to permit ignorance of the law—that is, ignorance of the kind of apple cider that may be lawfully sold—to be pleaded under the guise of mistake of fact against a prosecution for the unlawful possession of apple cider of a kind which it is unlawful to sell either under the constitutional or statutory provisions.

If the people and the Legislature, as a police regulation, intended specifically to prohibit the manufacture, sale, barter, and giving away of intoxicating liquors, or the possession of the same with intent to sell, et cetera, irrespective of the knowledge and intent with which such acts are done, a mistake of fact as to the intoxicating quality of the liquor sold or possessed on the part of the defendant would be ignorance of what the law really is. Therefore, the courts have given the construction contended for by me in applying the well-

known principle, ignorantia facti excusat, to this class of legislation; because to give force to such maxim as against a plain prohibitory statute would, in effect, destroy the prohibition desired, and permit ignorance of the law, under guise of ignorance of the fact, to be a defense thereto.

Succinctly stated, therefore, it is my opinion that the constitutional provision relative to intoxicating liquor, and the statutory enactments in furtherance thereof, are police regulations enacted while section 2094 was in existence; that section 2094 is but the embodiment of a well-known common-law principle; that the general construction and great weight of authority is that such a principle has, no application to police regulations, as held in Lightle v. State, supra; and that for such reason the question of defendant's knowledge of whether or not the liquor possessed by him was intoxicating is immaterial, and forms no defense to a prosecution either under the constitutional or statutory provisions.

I concur with the view expressed by the majority that, in the case of cider, it was necessary to allege and prove its intoxicating quality, or that it was a fermented beverage, such an issue being for the jury under proper instructions.