## ED. AMEY v. STATE.

No. A-8018.    March 12, 1932.
(9 Pac. [2d] 49.)

Park Wyatt and Thos. C. Wyatt, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court of Pottawatomie county of the crime of forgery in the first degree, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of seven years.

The record discloses that the defendant was an aged and ignorant negro, unable to read or write, and an habitual drunkard; that a banker had taught him to draw a picture which represented his signature, instead of signing by mark as is usually done in such cases; that defendant was the owner of an undivided interest in his father's homestead in section 30, township 9, range 4, in Pottawatomie county; that defendant was the owner of 40 acres of land in his own right in the same section, township, and range; that defendant went to the store of Archer & Bryden in the city of Shawnee to purchase some clothing on the installment plan; that E. C. Jordan, the manager of the store, filled out an application for credit, and that defendant drew his signature "Ed. Amey" on the application; that Archer & Bryden had sold the defendant goods before this, and the records of the office showed his name to be Ed. Amey; that defendant was not allowed to take the goods away that evening, but was told to come back the next day; that the question of the description of these premises came up, and Jordan told defendant he would have to have this description so that they could find him if he failed to pay; that defendant went to an office over the Shawnee National Bank and saw some men with a map, and they looked up the numbers of the land and gave him a piece of paper with the figures 30-9-4 on it, and also wrote a letter to the manager; that defendant went back the next day to get his clothes, and delivered this letter and slip of paper to the manager; that thereupon the manager struck up a deal to buy a part of the

royalty, and called in one Gallagher to share in the deal; that it was there agreed that defendant was to sell Gallagher two acres for $75 per acre and trade Jordan ten acres for a secondhand automobile; that thereupon the parties went to an abstractor, who looked up the records and prepared deeds covering 12 acres of land owned by Alex Amey in section 30-9-4; that the abstractor did not ask defendant where his land was located, nor if that particular description was the land owned by him, but prepared the deeds from information he obtained from his own records, and did not read the deeds to defendant after they were prepared; the evidence of the state then was that the defendant signed such deeds with the name Elix Amey. Defendant denies that he signed any such name or executed any papers at all; that he explained to Jordan and Gallagher at the store that the royalty was under the homestead of his father, and that his sister was his guardian and he could not make any deed. There is considerable evidence in the record, not only that defendant was an habitual drunkard, but particularly that he was intoxicated on that day.

Defendant testified that Jordan gave him $2 to get some whisky with; that he came back to the store and drank this whisky, and that Jordan then took him in a car and they went out and got some whisky, and that he had no recollection of going to anybody's office or executing any papers. That part of the evidence that defendant was an habitual drunkard was stricken by the court on the motion of the state.

Some significant facts are that Jordan, the prosecuting witness, personally knew the defendant; knew his name was Ed. Amey, and had his genuine signature to a purchase contract taken not more than twenty-four hours

before this deed was executed, and while negotiations were pending to buy this royalty; knew that the defendant was an ignorant negro, unable to read or write. He took the initiative in the royalty deal and had the papers prepared. He knew that the real estate he was getting a deed to was in the name of Alex Amey, and that that was not defendant's name. He accepted the deed purporting to be executed by Elix Amey, when the records disclosed that the real estate in question was owned by Alex Amey, and induced defendant to execute such deed as Elix Amey while well knowing that defendant's true name was Ed. Amey. Jordan testified that Gallagher made a check to defendant for $150 which Jordan cashed, and, after deducting $3 to cover recording expenses, gave the balance to defendant. Defendant denied that he received any money. Defendant is corroborated in this by the fact that, when he was arrested shortly after the deal was closed, he was too intoxicated to drive a car, and, when searched, no money was found upon him. The secondhand car traded by Jordan was taken back by him on the same day. The whole record indicates that Jordan and Gallagher were anxious to get hold of what they believed to be valuable royalty, and undertook to obtain the same from this ignorant negro. The state offered no evidence of intent to defraud anybody. Defendant, testifying for himself, denied any knowledge of the making of the instruments or any transaction whatever with Jordan and Gallagher with intent to defraud.

Defendant contends first that the court erred in taking from the jury all the evidence offered by him to prove that he was an habitual drunkard. Defendant also contends that the court erred in refusing to permit him to show that he was the owner of a tract of land in the same section, township, and range.

This evidence was clearly competent for the purpose of showing the intent of the defendant, since his evidence was that he had no recollection of executing any papers, and had no intent to defraud any one.

Defendant earnestly contends that this case falls within the 5th subdivision of section 1511, C. O. S. 1921; that the ignorance and incapacity of the defendant being undisputed, and the fact that he owned other real estate in the same section and his being unable to read or write, and that prosecuting witness procured the execution of the deed to himself—all of this establishes the fact that the defendant committed the act under an ignorance or mistake of fact, which disproves any criminal intent.

Defendant was prosecuted under section 2070, C. O. S. 1921, which provides:

"Any person who, with intent to defraud, forges, counterfeits or falsely alters * * * any deed or other instrument being or purporting to be the act of another, by which any right or interest in real property is, or purports to be transferred, conveyed or in any way changed or affected. * * *"

Section 1511, C. O. S. 1921, provides:

"All persons are capable of committing crimes, except those belonging to the following classes: * * *

"Fifth. Persons who committed the act, or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violation."

In 16 Corpus Juris, § 53, the rule is stated:

"Where one under ignorance or mistake of fact commits an act which but for such mistake would be a crime, there is an absence of malicious or criminal intent which is generally an essential element of crime, and the general

rule therefore is that such ignorance or mistake of fact will excuse one from criminal responsibility, provided, always, there is no such fault or negligence on his part as supplies the element of criminal intent * * * The guilt of an accused man depends on the circumstances as they appear to him."

In Coury v. State, 20 Okla. Cr. 8, 200 Pac. 871, in the body of the opinion at page 873, this court said:

"Unlike the statutes of most other states, our statutes, in section 2094, R. L. 1910, provide that all persons are capable of committing crimes except those belonging to certain classes, and in subdivision 5 of said section except 'persons who committed the act, or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violation.' As a general rule, a reasonable and bona fide belief in the existence of facts which, if they did exist, would render an act innocent is a good defense, but there are apparent and real exceptions to this rule. Clark on the Law of Crimes (2d Ed.) p. 100; 16 Corpus Juris, 84-86; 8 R. C. L. 60."

There being no proof on the part of the state to establish a criminal intent, and it appearing affirmatively from the whole record that whatever the defendant did was because of ignorance or mistake of fact, the evidence was insufficient to support the verdict of the jury.

DAVENPORT, P. J., concurs. EDWARDS, J., absent, not participating.