STATE v. HUMPHREY HOUSTON.

*Qualification and Disqualification of Electors under the Constitution, Art.* 6, § 1—*The Code,* §§ 2681, 2684—*Perjury.*

1. The oath prescribed for electors by *The Code,* § 2681, omits some of the essential requisites to voting contained in the Constitution, and is confined to those indispensable qualifications set out in Article 6, § 1, of the Constitution. The oath does not extend to disqualification incident upon conviction for crime.

2. Under *The Code,* § 2681, the voter swears to his possessing the qualifications of an elector. Under *The Code,* § 2684, he swears that he has not lost the right to vote by any provision of the Constitution or laws which takes that right from him.

3. *Therefore,* where an indictment charged the defendant with perjury, in that he swore, at the time he *registered as a voter,* that he was a duly qualified voter, whereas, at the time of taking such oath, the defendant was not a duly qualified voter, he having been *convicted* of larceny in 1884, and the judgment suspended on such conviction: *Held,* that the indictment was properly quashed.

(By SMITH, C. J., concurring: Under the Constitution, Article 6, § 1, a person does not forfeit his rights as an elector by a mere verdict of guilty, or a confession, when indicted for a felony, &c.; but, in order that such forfeiture shall attach, such verdict or confession must be followed by a judgment of the Court against the accused. Where one is convicted of a felony, but the judgment is suspended, he does not forfeit his rights as an elector. *Therefore,* the indictment in this case should have been quashed, because it appeared on its face that the judgment was suspended on the "conviction" charged in the bill.)

CRIMINAL ACTION, tried before *Merrimon, J.,* at December Term, 1888, of BUNCOMBE Superior Court.

The defendant is charged in the indictment with the crime of perjury, in swearing, before a Registrar, when making application to be registered as a voter, preparatory to the exercise of the electoral franchise, that he was "a duly qualified voter," when in fact he was not so duly qualified

and entitled to be registered, he having been theretofore (to-wit, in July, 1884) convicted of larceny by the verdict of a jury, upon which judgment had been suspended.

Upon the trial his counsel entered a motion to quash the indictment, which was allowed by the Court, upon the ground of its insufficiency in form to warrant a conviction and sentence, from which ruling the Solicitor on behalf of the State appealed.

*The Attorney General,* for the State.
No counsel for the defendant.

DAVIS, J.   The oath administered is contained in section 2681 of *The Code,* and is in these words: "I, _____, do solemnly swear that I will support the Constitution of the United States, and the Constitution of the State of North Carolina; that I have been a resident of the State of North Carolina for twelve months, and of the county of _____ for ninety days; that I am a duly qualified elector, and that I have not registered for this election in any other precinct, and that I am an actual and *bona fide* resident of _____ township. So help me, God."

The inquiry that presents itself, is as to the meaning and force of the words "a duly qualified voter," contained in said oath, in the taking of which the perjury is alleged to have been committed, and whether, in their connection, they embrace more than the original conditions on which depend the right to be admitted to the registry as a competent voter.   There is an omission, in the form of the oath, of some of the essential requisites prescribed in the Constitution, such as naturalization of one alien born, which the term may supply; and thus the oath is confined, as suggested, to those indispensable qualifications set out in the Constitution, Art. VI, sec. 1, and does not extend to the loss of the franchise consequent upon the commission of and convic-

tion for crime. This construction is supported by the form
of the oath directed to be taken, under section 2684, where
a registered voter is challenged. It is made the duty of the
judges to explain, to the person offering to vote, the required
qualifications, and to ascertain by examination if he pos-
sesses them, and then to administer the oath therein set out,
in which, among other specific prerequisites, are the words,
" that you are not *disqualified from voting* by the *Constitution
and laws of this State."* In the former, the voter swears to his
possessing the qualifications of an elector ; in the latter, that
he has not lost the right, by any provision in the Constitu-
tion and under the laws which takes it from him. The last
oath points distinctly, as the first does not, to the disqualifi-
cation which may arise under the Constitution. We are,
therefore, of the opinion, that the oath administered to the
defendant did not embrace the alleged grounds of disquali-
fication, and that for this reason there was no error in the
ruling of his Honor, in quashing the indictment.

No error.                                    Affirmed.


SMITH, C. J. (concurring). Concurring in the opinion of
the Court, that no false oath has been taken in this case,
upon the allegations contained in the indictment, I think
(and in this my convictions are strong) the ruling may be
sustained on the ground, as I understand the record, upon
which it was predicated in the Court below, and this is, that
a judgment upon conviction is essential to the deprivation
of the electoral franchise.

The section of the Constitution in question, after enumer-
ating the required qualifications for a voter, proceeds to
say : " But no person who, upon conviction or confession in
open Court, *shall be adjudged guilty* of felony, or other crime
infamous by the laws of this State, and hereafter committed,
shall be deemed an elector, unless such person shall be

103—25

restored to the rights of citizenship in a manner prescribed by law."

Now, upon a fair and reasonable interpretation of this highly penal clause, which, besides the punishment inflicted for the crime, affixes the personal disability, can it be extended to a mere verdict establishing guilt, or do these consequences follow the rendition of the judgment, and *result from it?* The able and efficient Attorney General contends, that the conviction alone and of itself is sufficient, without further action in the cause, to annex to the person of the elector the specified disqualifications, and withdraws from him, at once, the right, as a voter, to participate in any election thereafter held for the choice of public officers, or for any other purpose affecting the interests of the public. In support of this view are cited and relied on the cases of *Commonwealth* v. *Lockwood*, 109 Mass., 325, and *State* v. *Alexander*, 76 N. C., 231.

The cases have one feature in common, and refer to the exercise of executive clemency towards the convicted criminal, *in misericordia.* The case from Massachusetts puts a meaning upon the word "conviction" that confines it to the action of the jury alone. Yet, when the results are to reach beyond the punishment proper prescribed for the offence, and work *a change in the political status of the offender*—a deprivation of personal rights – the opinion pauses, and the eminent Judge (GRAY), who delivers it, uses this qualifying language: "When, indeed, the word 'conviction' is used to *describe the effect of the guilt of the accused, as judicially proved* in one case when pleaded, or given in evidence in another, it is sometimes in a *more comprehensive sense, including the judgment of the Court* upon the verdict or confession of guilt; as, for instance, in speaking of the plea, *avtre fois convict*, or of the effect of *guilt judicially ascertained as a disqualification for office.*" He proceeds to give this meaning to the word, where, in the Constitution, it is provided that no person con-

victed of bribery or corruption in obtaining an election or appointment " shall hold a seat in the Legislature, or any office of trust or importance in the State government."

I see no just reason for distinguishing in principle the consequences flowing from the criminal act, in the conditions under which, and the proof by which, they are to be extended to the disability to give evidence and the disability to vote. In my opinion, the same rule must govern in each.

The doctrine is that the party, in case of incompetency to testify (in the language of Mr. Greenleaf), " must have been legally *adjudged guilty* of the crime," (the very words used in the Constitution) " and this is not done in rendering the verdict, for it is the *judgment, and that only,* which is received as the legal and conclusive evidence of the party's guilt for the purpose of rendering him incompetent to testify." 1 Greenl. Evi., secs. 374 and 375.

In the words of Lord MANSFIELD, spoken in *Lee* v. *Gansel,* 1 Cowper, 3, " a conviction upon a charge of perjury is *not sufficient unless followed by a judgment.* I know of no case in which a conviction alone has been an objection, because, upon a motion in arrest of judgment, it may be quashed."

The cases are numerous to the same effect, as well as the concurring authors in works upon the law of evidence. *Rex* v. *Cosby,* 2 Satk., 658; 2 Inst., 419; Strange, 1198; 1 Stark Evi., 95.

Under the statute of New York which forfeits the dower of the widow who has been *convicted* of adultery in a divorce proceeding, it is held that there *must be a judgment* to render the bar effectual. *Scheffer* v. *Pruden,* 64 N. Y., 47; *Petts* v. *Petts,* 52 N. Y., 593.

In *Gallagher* v. *State,* 10 Texas App. Ct., 469, decided in 1881, the indictment was for illegal voting, prosecuted against one who had been found guilty of burglary and sentenced *in the verdict* to confinement in the penitentiary; and an

exception was taken, on a motion to quash, to the want of an averment *that judgment had been entered.*

The Court refused the motion, saying that "the word 'convicted,' used by the pleader, has a definite signification in law. It means that a *judgment* of *final condemnation* has been pronounced against the accused."

In *State* v. *Jones*, 82 N. C., 685, ASHE, J., speaking for the Court, and discussing the question whether the constitutional political incapacity should, in a case where this results, be made a part of the judgment of the Court, says : " This should not be the judgment. The Courts have no such power. They can only render such judgment as the law annexes to the crime and empowers them to pronounce. For the crime of larceny the law has prescribed the punishment, which the ·Courts, by their judgment, may impose, to be imprisonment in lieu of corporal punishment. This is the only judgment they can pronounce, the only punishment they can impose. In rendering their judgments, they cannot look to consequences. They have nothing to do with the *disqualifications and penalties which, under the Constitution, may result from them.*" This language conveys a very distinct intimation that the disabilities are consequent upon, though no part of, the judgment itself.

In *State* v. *Alexander,* the Chief Justice (PEARSON) dissented in an opinion which has ·been sustained by the Supreme Court of Illinois, in *Flaunce* v. *The People,* 51 Ill., 311, in construing a section of the criminal code of that State, which declares that " each and any person convicted " of any of the crimes previously mentioned, and of which larceny is one, shall be deemed infamous in a sense that he has been *convicted by the jury,* but not until the *judgment is rendered is he convicted by the law.*" The Court says : " An examination of the adjudged cases in the various States of the Union, where substantially the same laws are in force, will show that it is not the commission of the crime, nor the verdict of guilty,

nor the punishment, nor the infamous nature of the punishment, but the final judgment of the Court that renders the culprit. incompetent."

But without going outside the limits of the State, I find an adjudication in *State* v. *Valentine,* 7 Ired., 225, directly in point. In this case an accomplice in the murder, with which the prisoner was charged, had been convicted but not sentenced, and was examined as a witness against him, after objection (or rather his deposition, taken immediately between verdict and judgment, was used in evidence), and he was found guilty. NASH, J., afterwards Chief Justice, in disposing of the exception to the receiving the deposition in evidence, thus speaks: "His guilt, to reach that result, must be legally ascertained by a conviction, and that *followed by a judgment.* * * * This can only be done by the record, and that must show both a *conviction and judgment;* otherwise it is incomplete—not a full record of the case. The judgment may have been arrested and the conviction thereby rendered a nullity, as if it never had an existence."

To authorize the loss of personal privileges as a witness or voter, there must be administered the appropriate punishment due to crime imputed and ascertained by a jury finding, or confessed, and the cause must come to an end by a final judgment disposing of it. Such must be understood to be the meaning of the term "conviction," upon which is dependent the incurring of such disabilities. Until this is done, and the cause fully disposed of, there has been no condemnation of the law, nor follow those further penal consequences to the personal status of the criminal; and this from that benignant rule, adopted in the construction of penal statutes of doubtful import, which interprets them favorably towards the accused. The language of the Constitution itself enforces the rule of construction in the present case, since, not stopping at the words "conviction or confession in open court," it proceeds, and requires the person

to be also "adjudged guilty," and this plainly implies the concurring action of the Judge to give it full legal effect.

In the indictment it is alleged that the judgment consequent upon the verdict has been suspended—that is, put off, to be hereafter pronounced, if deemed proper, when, if ever, moved hereafter, it is exposed to an order of arrest, founded upon any substantial defect in the indictment itself, and if arrested, the force of the verdict is destroyed, and, in legal contemplation, there has been no conviction of crime, and can be no punishment inflicted to which the disability can attach.

Moreover, while the prosecution remains in an unfinished state, no appeal is admissible to correct any errors in law that may have been committed on the trial, and which would render it invalid.

There is another anomalous feature developed, if the rendition of the verdict suffices to produce this personal infirmity in the elector. The Judge deems the conduct of the accused such, or for some other consideration, as not to require the present vindication of the violated law, and forbears to proceed; and yet the severe and heavier punishment of disfranchisement cannot be arrested while the verdict remains, neither by the Court nor through intervening executive clemency.

If sufficient grounds were found for staying the hands of justice, as must be inferred from forbearing to render judgment, must it have been intended that the heavier blow should fall upon the offender, in the loss of citizenship, recoverable only in an action to be provided by legislation? In either aspect of the case, I concur in the ruling of the Court, that the indictment be quashed.