Ex parte SAM A. WHITE.

No. A-5307.    Opinion Filed Nov. 8, 1924.

(230 Pac. 522.)

(Syllabus.)

**Pardon—Term "Conviction," as to Pardons and Paroles, Defined.**
The term "conviction," in article 6, § 10, of the Constitution, relating to pardons and paroles, denotes the final judgment of the trial court, upon a plea of or verdict of guilty.

Habeas corpus by Sam A. White for release from custody. Writ denied.

See, also, 27 Okla. Cr. 432, 228 Pac. 1119.

C. H. Thomason, for plaintiff in error.

The Attorney General, for the State.

BESSEY, J.  The petitioner, Sam A. White, in his application for a writ of habeas corpus, says that he is illegally restrained of his liberty by the warden of the penitentiary, by virtue of a commitment from the district court of Okfuskee county predicated upon a judgment of that court rendered October 15, 1923, adjudging him guilty of manslaugh-

ter in the first degree. The petitioner contends that, after the rendition of the verdict and before the judgment of the court was rendered, the Governor of this state, J. C. Walton, issued to the petitioner a parole in due form, and that the parole was by him accepted.

The verdict finding defendant guilty was rendered on October 3, 1923; the parole was issued and delivered on October 12, 1923; and the judgment of the court on the verdict was rendered on October 15, 1923. The sheriff of Okfuskee county and the warden of the penitentiary have refused to recognize the validity of the parole, for the reason that it was issued and delivered before the time the petitioner was formally sentenced.

The Constitution of this state, article 6, section 10, provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law."

Section 9227, Compiled Statutes 1921, provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles and pardons for all offenses, except cases of impeachment, upon such conditions and such restrictions and limitations as he may deem proper, subject, however, to the regulations hereinbefore prescribed."

The sole question for consideration in this proceeding is the correct interpretation of the phrase "after conviction," as found in the sections of the Constitution and statutes quoted. We are here called upon to decide whether the Governor shall have power to grant reprieves, commutations, paroles, and pardons at any time after a verdict of guilty ren-

dered by the jury or plea of guilty, or whether the term "after conviction," as used in our Constitution and statutes, means the formal judgment of the court following the verdict or plea of guilty.

In general the word "conviction" in criminal procedure is of an equivocal meaning, because of the varied senses in which it is used. For the purpose of classification it may be said to have two meanings, the first the general or ordinary meaning, and second, the restricted and technical meaning. In its general or more comprehensive sense, the term has been defined as applied to one who has been found guilty of some criminal offense by a legal tribunal; a determination of guilt in a criminal prosecution according to some established legal method, as by a plea of guilty, or by being found guilty by a verdict of a jury. The term "conviction" is ordinarily used in legal phraseology to designate a particular stage of a criminal prosecution triable by jury, the point where the jury renders a verdict of guilty, or the establishment of guilt by a plea of guilty.

The word, when used in its more restricted and technical signification, has been defined as the final judgment in a prosecution, conclusively establishing guilt; a final judgment of the trial court on a plea or verdict of guilty; a final judgment of the court in passing sentence: 13 C. J. 906, 907. Whether the term "conviction" is used in its general or in its restricted sense as applied to issuance of pardons and paroles has been variously construed by the appellate courts of the several states.

The Court of Appeals of Virginia, in 1874, in Blair v. Commonwealth, 25 Grat. 850, held that the Governor had authority to pardon a person convicted of a felony by the verdict of a jury before sentence was passed upon him by the court. The Constitution of the state of Virginia at that

time authorized the Governor to grant reprieves and pardons after conviction.

The Supreme Court of Virginia, in 1922, in the case of Smith v. Commonwealth, 134 Va. 589, 113 S. E. 707, 24 A. L. R. 1286, held that, pending a motion to set aside a verdict of guilty and before entry of judgment, one is not convicted, within the meaning of the statute providing for removal from office of a public official convicted of an act constituting a violation of a penal statute involving moral turpitude. In the Smith Case it is pointed out that where a statute provides that "each and every person convicted" of certain crimes mentioned "shall be deemed infamous and shall forever thereafter be rendered incapable of holding any office of honor, trust, or profit, of voting at any election, of serving as a juror and of giving testimony," it is not the verdict of guilt or the infamous nature of the punishment, but the formal judgment of the court that renders the culprit incompetent. Faunce v. People, 51 Ill. 311.

In Commonwealth v. Lockwood, 109 Mass. 325, 12 Am. Rep. 702, construing the provision of the Massachusetts Constitution, which gave to the Governor the power to pardon offenders but provided that no pardon before conviction should avail the party pleading the same, it was held that a pardon granted after verdict of the jury but before rendition of judgment was valid.

In another Massachusetts case, Case of Falmouth, Mass. Election Cases (1853 Ed.) 203, construing a constitutional provision that no person shall ever be admitted to hold a seat in the Legislature or any office of trust or importance in the commonwealth who shall in due course of law have been convicted of bribery or corruption in an election or appointment, it was held that the word "conviction" applied to final judgment and sentence of the court.

In the case of State v. Judge of Section B, Criminal Dist. Court, 48 La. 109, 18 So. 943, it was held that the pardoning power of the Governor may operate during the period between the verdict of the jury and sentence by the court pursuant to the terms of the Constitution, which lodge that power with the Governor "after conviction."

The authorities are practically unanimous in holding that under statutes disqualifying persons from testifying because of their having been convicted of crime, the disqualification does not arise upon the mere rendition of a verdict of guilty, but only when there has been a judgment of conviction. See authorities in Smith Case, 134 Va. 589, 113 S. E. 707, 24 A. L. R. 1288.

The authorities are all practically unanimous in holding that under statutes providing that where persons have been convicted of certain crimes, it shall constitute a disqualification to vote, the word "conviction" means a final judgment. People v. Fabian, 192 N. Y. 443, 85 N. E. 672, 18 L. R. A. (N. S.) 684, 127 Am. St. Rep. 917, 15 Ann. Cas. 100.

In the case of Parker v. State, 103 Tenn. 547, 53 S. W. 1092, the jury brought in a verdict of manslaughter. The entry recording the verdict recited:

"It is therefore ordered and adjudged by the court that the defendant be confined in the penitentiary for a term of two years, and pay the costs of this prosecution, for which execution may issue."

Afterwards a motion for a new trial was filed and after the overruling of this motion a formal judgment in detail was entered. Pending the hearing on the motion for new trial a pardon was granted to the accused. It was held that the pardon, under these circumstances, was valid and effective.

In People v. Marsh, 125 Mich. 410, 84 N. W. 472, 51 L. R. A. 461, 84 Am. St. Rep. 584, it was held that a pardon granted after conviction, and pending a hearing in the Supreme Court, to which the case had been removed by bill of exceptions before sentence, was valid, under a constitutional provision that the Governor may grant pardons "after conviction."

In State v. Alexander, 76 N. C. 231, 22 Am. Rep. 675, the court said:

"At common law the Crown exercised the power of pardon at any time. The consequence was that crimes were smothered. The facts were not brought to light. The person charged was not brought before the public and required to answer the charge and of course the public were dissatisfied. But under our Constitution and statutes, the person charged must be brought before the public in a public trial and face his accusers and all the facts must appear and the jury must find him guilty and the court must sentence him. If then he will ask for pardon, he cannot deceive the pardoning power."

Quoting further:

"Inasmuch as the Constitution in the same section in which it authorizes the Governor to pardon 'after conviction,' requires him to report to the General Assembly not only the conviction but the sentence, is it not intended that there shall be a sentence to report; else how can he report it?"

In the case of Smith v. State, 6 Lea (Tenn.) 647, it was held that conviction was not complete until judgment was rendered on the verdict, within the meaning of the provision of the Constitution, giving the Governor power to pardon after conviction.

In the case of Campion v. Gillan, 79 Neb. 364, 112 N. W. 587, 11 L. R. A. (N. S.) 865, 126 Am. St. Rep. 667, 16 Ann. Cas. 319, it was held that under the provision of the

Nebraska Constitution the Governor cannot pardon an offense until after conviction by the judgment of the court. The provision of the Constitution (art. 5, § 13) to which reference is made is:

"The Governor shall have the power to grant reprieves, commutations and pardons, after conviction * * * subject to such regulations as may be provided by law, relative to the manner of applying for pardons."

In the case of Gilmore v. State, 3 Okla. Cr. 639, 108 Pac. 416, 139 Am. St. Rep. 981, the defendant was convicted of the crime of conducting a public gambling house, and was sentenced to pay a fine of $500, and to serve a term of 30 days in jail. From this judgment he appealed to this court. While the case was pending on appeal the acting Governor granted the defendant an unconditional pardon. It was held that an appeal pending in this court does not deprive the Governor of the power to grant a pardon.

While under the facts in the Gilmore Case it did not seem necessary to define the term "conviction," the court did define it thus:

"In its ordinary sense the term 'conviction' is used to designate that particular stage of criminal prosecution when a plea of guilty is entered in open court, or a verdict of guilty is rendered by a jury; but in a strict legal sense it denotes the final judgment of the court, and imports the final consummation of the prosecution from the complaint to the final judgment of the court by sentence."

The second syllabus is as follows:

"The term 'conviction,' in article 6, § 10, of the Constitution, denotes the final judgment of the trial court, upon a plea of or verdict of guilty."

In Ex parte Bustillos, 26 N. M. 449, 194 Pac. 886, it is said:

"In England * * * the power to pardon was vested in the King. It was a sovereign right and an attribute of the Crown. The King, in his coronation oath, promised to execute justice with mercy." But "the pardoning power in America, both in the federal and state governments, is not, as it is in Great Britain, an attribute of the executive departments, but it is a power which exists only because it is granted by the people, either by constitutional or statutory provision."

The power to pardon or parole a convict must be exercised within the scope of the restrictions named in the grant.

To determine the meaning of the words "after conviction," as used in the Constitution and statutes, we should not be confined entirely to judicial precedent. Judicial precedent in this case is an uncertain guide, because the courts, in about equal numbers, have reached opposite conclusions. The power lodged with the Governor to grant pardons and paroles "after conviction" is not an inherent power; it is a grant of power by the people for the purpose, chiefly, of correcting any miscarriage of justice by the courts. Ours is a republican form of government, with three co-ordinate branches, the executive, the legislative, and the judicial departments, and it was the intention of the framers of the Constitution that one should not encroach upon the other. So, when the power of the executive to grant pardons was limited to court cases "after conviction," we think that this term was intended to import a final judgment in a prosecution conclusively establishing guilt, thus eliminating overlapping power and authority over the same case at the same time by the executive and judicial departments. The most rational construction would be that the Governor should refrain from acting until after the final determination of the case, as found by the judgment of the court. For an accused to seek exoneration from two co-ordinate branches of the govern-

ment at the same time would not be conducive to a harmonious administration of criminal law.

That the framers of the Constitution intended that executive clemency should not be invoked until after final adjudication by the court is further indicated by the fact that the members of the first Legislature, many of whom were members of the convention that framed this provision of the Constitution, provided for a board of pardons (a provision since repealed), which was empowered to investigate and report to the Governor at stated intervals concerning convicts who had been sentenced for crime; provided for publication and hearings of applications for pardons and paroles at stated times; and provided that the application should state the name of the "convict," the crime for which he was convicted, and the term of his "sentence." All these provisions indicate that it was intended that the Governor should act methodically and with deliberation, a method impossible to carry out in the short interim usually intervening between the rendition of a verdict and the formal judgment of the court following the verdict.

Where a question of interpretation of a provision of the Constitution or a statute of uncertain meaning is presented, and similar statutes have been interpreted in sister states in opposite ways, this court will adopt that construction best calculated to carry out the intention of the lawmakers, relative to the subject-matter involved, and to determine the real intent of the lawmakers, and in doing so the court may consider other statutes and establish regulations relating to the same subject.

We therefore adopt the rule announced in the Gilmore Case, supra, that:

"The term 'conviction,' in article 6, § 10, of the Constitution, denotes the final judgment of the trial court, upon a plea of or verdict of guilty."

The application for a writ of habeas corpus is therefore denied.

MATSON, P. J., and DOYLE, J., concur.