FREDERICK ASHCRAFT v. STATE.

No. A-9543.   Jan. 11, 1940.
(98 P. 2d 60.)

O. B. Martin, of Blackwell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and J. R. Gurley, Co. Atty., of Blackwell, for the State.

BAREFOOT, J. The defendant was charged in the district court of Kay county with the crime of operating

a motor vehicle while under the influence of intoxicating liquor; was tried, convicted and sentenced to serve a term of six months in the penitentiary, and has appealed.

A brief statement of the facts is that defendant, on October 4, 1937, was seen by a traffic officer driving a truck from the baseball park of the Continental Oil Company, in Ponca City, Kay County, Okla. That the officer, Floyd Story, who was directing traffic at this time, saw the truck run into a board gate and break the chains as it came into the street. He tried to stop it, but it did not stop. He was holding up his hand and also blowing his whistle. He jumped back out of the way. He at first did not see anyone under the steering wheel, but, as it passed him, he saw someone raise up. He then saw the driver run upon the curbing. He further testified as follows:

"A. About the time he was ready to go up on the driveway, he grabbed the steering wheel and righted his truck and run down over a curbing and the sideboards of his truck fell off the back of them, but the front end held it and he was dragging the sideboards, and I didn't understand what was wrong and I attempted to stop him and got on my motorcycle, and before I got to him he run over the curb at Pine and South avenue and then pulled back out in the street and started north on Pine street and I caught him and tried to stop him, but he seemed to be asleep or not paying any attention to me or anything and driving from one side of the street to the other. And in front of the Triple-A Barbecue stand I pulled up by the side of him and he pulled to the right and he hit the curb and his car jumped the curb and ran into and knocked down some signs and he crashed into a car parked there."

He saw defendant when he got out of the truck. Defendant was staggering, and attempted to start an argument with the party who owned the automobile

which he ran into. He could smell alcohol and liquor on his breath, and he was under the influence of intoxicating liquor, and in his opinion was drunk. He took him to the city jail in Ponca City. This was a little after 12 noon. He was driving 40 to 45 miles per hour.

Mrs. Anna Lee Lobinsky owned the Triple-A Barbecue stand. She saw defendant after the wreck, and had a conversation with him. She said he was staggering, and the officer was holding him up, and that in her opinion he was intoxicated.

Zack T. Miller, Jr., a 16 year old boy, whose car was standing at the barbecue stand, and was run into by defendant, testified as did the other witnesses. That he saw the officer holding him up and that he was intoxicated.

W. R. Withrow, a deputy sheriff, was present at the time defendant was brought to the police station, and was taken by him to Newkirk. He testified that defendant's breath smelled like he had been drinking a cheap grade of whisky, and that he was intoxicated.

Defendant testified that he had first come to Ponca City four years ago, and had returned to Iowa, and come back to Ponca City; that he was married and had one child; that at the time of his trial he was working in Texas where he had a job as a welder; that on the morning of the 4th of October, 1937, he met a Mr. Dye, whom he knew, and who was driving a truck. That he got in the truck and they went to Coffee Bill's place and drank a mug of beer; that afterwards they drove around and he was trying to find a job. They then went to Blackie's place about 11:30 and each drank a bottle of beer. He danced with the girl who owned an interest in the place. They left there just before 12 o'clock, and Mr. Dye got

out of the truck and was talking to a Mr. Riggs whom they met. He drove off in the truck and left them there, saying, "I am going down the street." He went out to the baseball park of the Continental Oil Company where he was afterwards seen by Officer Floyd Story, as heretofore related. His explanation of the accidents was that the brakes of the truck were in a defective condition. They "stuck" and he had to reach down and get them loose with his hands, and that for this reason he ran through the gates at the ball park, and into the curbing and into the sign and parked automobile at the Triple-A Barbecue stand. He testified that he had drunk no intoxicating liquor of any kind with the exception of the mug of beer and the bottle of 3.2% beer.

Several witnesses testified in behalf of defendant. Two or three as to seeing him at the time of the accident, and that he was not staggering. That he did not have to be held up, and in their opinion he was not intoxicated or under the influence of intoxicating liquor.

Mr. Dye corroborated his statement with reference to the truck and the drinking of the beer. He said the truck was not in good repair, but he could drive it because he understood it. On cross-examination he stated he did not know defendant was going away with the truck when he drove off, and that he was trying to locate him at the time of the accident, and that he talked about having defendant arrested for stealing his truck. He afterwards stated that this was for the purpose of being able to collect insurance which he had on the truck.

It is first contended by defendant that the court erred in refusing to instruct the jury that beverages containing not more than 3.2 per cent. of alcohol, measured by weight, are nonintoxicating under the provisions

of section 1, chapter 153, Session Laws 1933, 37 Okla. St. Ann. § 151, which provides:

"Beverages containing more than three and two tenths (3.2%) per cent. alcohol by weight are hereby declared to be intoxicating; all other beverages are declared to be non-intoxicating. The manufacture, distribution and sale of beverages containing more than one-half of one (½ of 1%) per cent. alcohol by volume and not more than three and two-tenths (3.2%) per cent. alcohol by weight is hereby declared subject to the rules and regulations hereinafter provided."

And that if defendant had been drinking beer or liquor containing not more than 3.2 per cent. alcohol, he could not be convicted of driving an automobile while under the influence of intoxicating liquor. A complete answer to this proposition would be that under the facts in this case the jury would have been justified in finding, as a matter of fact, that defendant was under the influence of intoxicating liquor, other than by the drinking of 3.2 beer. But it is our desire to decide this question upon the issue raised, for the reason that it will arise in many cases and should be settled upon its merits.

The statute upon which defendant was charged was Oklahoma Statutes 1931, § 10324, 47 Okla. St. Ann. § 93, which is as follows:

"It shall be unlawful for any person who is under the influence of intoxicating liquor, or who is a habitual user of narcotic drugs, and the having on or about one's person or in said vehicle of said intoxicating liquor is prima facie evidence of a violation of this act, to operate or drive a motor vehicle on any highway within this state, as defined in section 1, of this act, and any person violating the provisions of this section shall be deemed guilty of a felony and shall be punished by imprisonment in the penitentiary not more than one year, or by fine of not more than Two Thousand ($2,000.00) Dollars, or by both imprisonment and fine."

314

The statute with reference to defining "intoxicating and nonintoxicating beverages" is section 1, chapter 153, Session Laws 1933, 37 Okla. St. Ann. § 151.

It is contended that by reason of this statute, a man who has been drinking beverages so declared to be nonintoxicating cannot in the eyes of the law be "under the influence of intoxicating liquor," no matter how drunk or intoxicated he may be. The cases relied upon by defendant, in our opinion, do not sustain this contention. The statutes upon which they are based apply to beverages containing more than one-half of one per cent. of alcohol even though not intoxicating in fact. These statutes, as the one above quoted, were enacted pursuant to the police power of the state, and were entirely independent of the prohibitory provisions of the state Constitution. The act, section 1, chapter 153, Session Laws 1933, 37 Okla. St. Ann. § 151, was passed for the purpose of licensing and taxing the sale of beverages containing more than one-half of one per cent. of alcohol and not over 3.2 per cent. The definition in section 1 was for the purpose of thus classifying beverages, as a foundation for the subsequent licensing and taxing provision. It was not thus intended that they should regulate the provisions of the law with reference to the enforcement of the criminal statutes. The Constitution, Okla. St. Ann. Const. Prohibition Ordinance, page 1260 prohibits, "the manufacture, sale, barter, giving away, or otherwise furnishing, except as hereinafter provided, of intoxicating liquors within this state," and it further provides for the punishment of "any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind, including beer, ale, and wine, contrary to the provisions of this section." These provisions have been held as self-executing. Baldwin v. State, 40 Okla. Cr. 7, 266 P. 795; Ex

parte Smith, 24 Okla. Cr. 415, 218 P. 708; Coury v. State, 20 Okla. Cr. 8, 200 P. 871; Nowakowski v. State, 6 Okla. Cr. 123, 116 P. 351.

In using the expression, "under the influence of intoxicating liquor," the Legislature undoubtedly used the term in the same sense as it had been used in the Constitution, and had reference to all liquor which is intoxicating in fact. In one act it was the intention to simply classify such beverages for the purpose of license and tax under the provisions of the act. Under the other, it was the intention to punish those who were in fact "under the influence of intoxicating liquor," whether it be caused from drinking beer with an alcoholic content of 3.2 per cent., or liquor in excess thereof. A construction different from this would, to our mind, nullify the statute.

The construction which we have placed upon the statute is supported by the courts which have passed upon similar ones. In the case of State v. Parquette, 54 R. I. 283, 172 A. 613, the court said in the syllabus:

"State could prove that defendant, charged with drunken driving, was under influence of intoxicating liquor notwithstanding he had imbibed nothing but 3.2 per cent. beer, declared by license statute to be nonintoxicating in fact (Pub. Laws 1932, c. 1914, amending Gen. Laws 1923, c. 98, § 16; Pub. Laws 1933, c. 2013, § 2)."

In the body of the opinion, the court said:

"The evidence introduced by the state proved defendant guilty of the offense charged. Defendant testified that while at a banquet he drank six bottles of beer each of which contained not more than 3.2 per centum of alcohol. He claims that under this evidence his conviction is contrary to law. He cites as authority in support of his claim section 2, c. 2013, P. L. 1933, which divides beverages into two classes, 'intoxicating and nonintoxicating,' and states, 'It is hereby declared that

beverages containing not more than 3.2 per centum of alcohol by weight are nonintoxicating in fact.' Defendant argues that because of this latter clause evidence was inadmissible to prove that he was under the influence of intoxicating liquor when he consumed only a beverage declared by the Legislature to be 'nonintoxicating in fact.' There is no merit in the claim made by the defendant. The statute has no bearing upon the charge made against him.

"Statutes are to be construed with reference to the object sought to be accomplished by them. The chapter relied upon by defendant was enacted for the purpose of creating a system of licensing and controlling the manufacture and sale of alcoholic beverages. The division of beverages into the two classes—intoxicating and nonintoxicating—was for the purpose of providing that no license for the manufacture or sale of intoxicating liquor should be issued while the Eighteenth Amendment to the Constitution of the United States remained in force. The declared purpose of this chapter is the promotion of temperance and the reasonable control of the traffic in alcoholic beverages. Section 81. Nothing is found in this chapter which says, either directly or by implication, that the consumption of a beverage containing alcohol will not have an intoxicating influence upon the consumer.

"Defendant was charged with violating a provision of the law relating to the operation of motor vehicles. Chapter 98, G. L. 1923. In this chapter it is recognized that an automobile is a dangerous instrumentality while being operated by a person under the influence of intoxicating liquor. To prevent such operation the statute provides that 'No person shall operate * * * a motor vehicle * * * while under the influence of * * * intoxicating liquor whatever its alcoholic content. * * *' Chapter 1914, P. L. 1932, amending Gen. Laws 1923, c. 98, § 16. This chapter is not limited or repealed by chapter 2013, cited in behalf of the defendant. * * *"

In the case of Commonwealth v. Bridges, 285 Mass. 572, 189 N. E. 616, the same conclusion is reached as in the

above case, and under almost identical statutes. See, also, State v. Hutchinson et al., 194 Ark. 1057, 110 S. W. 2d 7; Moss v. State, 4 Okla. Cr. 247, 111 P. 950.

It is next contended that the judgment and sentence of six months in the penitentiary is excessive under the facts in this case. We are inclined to agree with this contention. In this case the defendant drove the truck only a short distance. No one was injured, and it was not driven at an excessive rate of speed. The defendant contended that the brakes were in bad repair, and that it was for this reason he could not stop the truck. From the evidence in the case, we are of the opinion that had he not been under the influence of intoxicating liquor he could have handled it so that no accident would have occurred. However, the owner of the truck testified that the brakes were in improper condition.

The statute under which defendant stands charged provides as a punishment a sentence not to exceed one year in the penitentiary or a fine not to exceed $2,000, or by both such fine and imprisonment. It does not provide for a jail sentence. While recognizing the fact that it is not the province of the courts to deal with the policy of the law, as that belongs to the Legislature, our experience with the above statute is that many juries and courts are refusing to give a penitentiary sentence in cases where the facts are similar to the instant case. Others believe that a prison term should be given for a violation of this statute and are assessing a penitentiary sentence. As to whether this statute should be amended so a jail sentence may be given is a question for the proper consideration of the Legislature, who are the representatives of the people in public enactments. This court, in exercising its constitutional and statutory rights to modify a judgment and sentence, acts only that justice may be done

in the individual case, as the facts justify. If we had the power under the statute, a jail sentence would be imposed in the instant case. Not having this power, under the statute, we are of the opinion the judgment and sentence should be modified to a fine of $100 and costs. If the defendant is unable to pay this fine and costs it will amount to a service of six months in the county jail.

There is one further contention that by reason of its importance in the future we deem it necessary to consider at this time. As a part of the judgment and sentence in this case, the court decreed "that defendant's driver's license is hereby revoked for a period of one year, and the clerk of this court is hereby ordered to mail the same to the Department of Public Safety." In this case a supersedeas bond was given by the defendant. The record does not reveal whether that part of the judgment and sentence with reference to the driver's license was superseded, or was enforced. But for future guidance we desire to refer to the statutes upon this question.

Section 25, art. 5, chapter 50, 1937 Session Laws, 47 Okla. St. Ann. § 295, provides:

"The commissioner shall forthwith revoke the license of any operator or chauffeur upon receiving a record of such operator's or chauffeur's conviction in any court of record of any of the following offenses, when such conviction has become final.

"1.  Manslaughter (or negligent homicide) resulting from the operation of a motor vehicle;

"2.  Driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug;

"3.  Any felony in the commission of which a motor vehicle is used;

"4. Failure to stop and render aid as required under the laws of this state in the event of a motor vehicle accident resulting in the death or personal injury of another;

"5. Perjury or the making of a false affidavit or statement under oath to the commissioner under this act or under any other law relating to the ownership or operation of motor vehicles;

"6. Conviction, or forfeiture of bail not vacated, upon three (3) charges of reckless driving committed within a period of twelve (12) months in a court of record."

Section 26, art. 5, chapter 50, Session Laws of 1937, 47 Okla. St. Ann. § 296, provides:

"(a) Whenever any person is convicted or pleads guilty in any court to an offense involving the use of a motor vehicle, such court shall make immediate report to the Commissioner of Public Safety setting forth the name of the offender, the number of the operator's, or chauffeur's license, and the penalty imposed.

"(b) The Commissioner of Public Safety may in his discretion suspend or revoke the licenses of such person, such suspension or revocation being in addition to the punishment imposed by the court.

"(c) Any person whose license is so suspended or revoked under the provision of this section shall have the right of an appeal as otherwise provided for in this act."

Section 27, art. 5, chapter 50, Session Laws of 1937, 47 Okla. St. Ann. § 297, provides:

"The commissioner shall not suspend a license for a period of more than one (1) year and upon revoking a license shall not in any event grant application for a new license until the expiration of one (1) year after such revocation."

Section 28, art. 5, chapter 50, Session Laws of 1937, 47 Okla. St. Ann. § 298, provides:

"The commissioner upon suspending or revoking a license shall require that such license and the badge of any chauffeur whose license is suspended or revoked shall be surrendered to and be retained by the commissioner except that at the end of the period of suspension such license and any chauffeur's badge so surrendered shall be returned to the licensee."

In the same act, section 6, art. 5, chapter 50, Session Laws 1937, 47 Okla. St. Ann. § 276, it is also provided:

"10. Any person adjudged by any court of record to have been guilty of careless, reckless or negligent driving or operation of a motor vehicle, or who has been convicted for driving a motor vehicle while under the influence of intoxicating liquor, shall forfeit the right or privilege to a license as an operator or chauffeur, and the license may be canceled or suspended for such time as the 'Commissioner' or the court may by order direct."

The above statutes have been construed by the Supreme Court of this state in the case of Gentry, Commissioner of Public Safety, v. Blinn, County Judge, 184 Okla. 9, 84 P. 2d 27, 30. This case was an original action in the Supreme Court by the Commissioner of Public Safety against the county judge of Oklahoma county, seeking a writ of prohibition, prohibiting the county judge of Oklahoma county from further proceeding in an appeal from an order of the commissioner revoking the driver's license of an individual. The exact question in that case is not here involved, but Justice Riley, in examining and construing the statute above quoted, came to conclusions that have a bearing upon the issues here involved. Without reviewing the whole decision, it may be said that the court came to the conclusion that certain paragraphs of the Motor Vehicle Act, and especially those above quoted, were repugnant to and in conflict with each other, and that it was necessary to resort to some of the well-known canons

of construction of statutes and that the whole act should be read and construed, to the end that the true intent of the Legislature in the passage of the same should prevail. It will not be necessary for us to discuss these various conflicts, as they are apparent on their face, nor will it be necessary for us to set forth the different rules of construction applied, as this has been fully covered by the Supreme Court in the case above cited.

From an examination of the statutes, and applying well-known canons of construction, we have come to the conclusion:

First. That after final conviction of a party in a court of record, the court has the power, and it is its duty to require, the defendant to surrender to it all operator's or chauffeur's licenses held by such person so convicted.

Second. Upon receipt of the license by the court the same shall be forwarded to the Commissioner of Public Safety.

Third. This report should contain: (a) the name of the offender; (b) the number of the operator's or chauffeur's license; (c) the penalty imposed; and (d) a statement that the judgment and sentence has become final. If an appeal is taken to the Criminal Court of Appeals, in the manner provided by law, the conviction does not become final until the judgment has been affirmed, and a mandate returned to the trial court.

Fourth. If the conviction be for an offense mentioned in section 25, chapter 50, 1937 Session Laws, 47 Okla. St. Ann. § 295, it then becomes the mandatory duty of the commissioner, upon receipt of the record, which shows that the conviction has become final, to revoke the license, and refuse to grant a further license for a period not to exceed

one year from the date on which the conviction has become final. There is no appeal from the order of the commissioner in cases that are mentioned in section 295, infra.

Fifth. If the conviction be for an offense under the Motor Vehicle Act, other than that mentioned in section 295, the Commissioner may, in his discretion, suspend or revoke the license, such suspension or revocation being in addition to the punishment imposed by the court.

Sixth. This suspension may be for a period not in excess of one year, and is subject to an appeal to the county court, and from there to the district court, in the manner provided by law. The judgment of the district court is final. This revocation or suspension of the license should not be made until the judgment has become final, as expressed in section 294 (c), 47 Okla. St. Ann.

Seventh. Under the act, the Commissioner of Public Safety is the one who has the authority to cancel, suspend, or revoke the license, and this cannot be done by the court.

As pointed out in the case before the Supreme Court, Gentry v. Blinn, 184 Okla. 9, 84 P. 2d 27, there is a direct conflict between subdivision 10, section 276, and the later provisions of the act above cited. With reference to this the court says:

" 'Hence, it is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole and every part of a statute taken and compared together. The several provisions of the statute should be construed together in the light of the general purpose and object of the act and so as to give effect to the main intent and purpose of the Legislature as therein expressed. If possible, a statute should be so construed as to render it a consistent and harmonious whole. If different portions seem to conflict,

they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory.' Eagle-Picher Mining & Smelting Co. v. Linthicum, 175 Okla. 483, 53 P. 2d 687, 689.

"This in turn calls for the application of the rule announced in Palmer et al. v. Kind et al., 75 Okla. 276, 183 P. 411, as follows: 'Where general terms or expressions in one part of the statute are inconsistent with more specific or particular provisions in another part, the particular provision will be given effect, as a clearer and more definite expression of the legislative will.'

"Applying that latter rule, we have specific provisions for mandatory revocation of the license for conviction in any one of six specified cases, the second of which is conviction of the offense of driving an automobile while under the influence of intoxicating liquor, or a narcotic drug, provided for in section 25, of the act, while the provisions under subdivision 10, of section 6, and subdivision (b) of section 26, are in general terms. These general terms or expressions being inconsistent with the specific and more particular provisions in section 25, the latter must prevail and be given effect, as 'clear and more definite expression of the legislative will.'

"The legislative intent then is clearly made to appear as leaving it within the discretion of the Commissioner of Public Safety to suspend or revoke the license under section 26, of the act in all cases other than those specifically mentioned and named in section 25, of the act. This brings the act in harmony with the clear intent of the Legislature to except cases where the cancellation or revocation of the license is made mandatory under the provisions of the act in section 30 of the act, 47 Okla. St. Ann. § 300, in providing for appeal to or review by the County Court. To hold otherwise would leave that part of section 30, supra, which reads, 'Except where such cancellation or revocation is mandatory under the provisions of this act,' as nugatory and meaningless. In other words to hold otherwise would be to say that in no case is the can-

cellation or revocation of the license 'mandatory.' Likewise to hold otherwise would be to render all the provisions of section 25, ineffective."

From what has been stated it follows that that part of the order of the court in the instant case which seeks to order the cancellation of defendant's license is error. This order should be entered by the Commissioner of Public Safety when the record is certified to him by the court after final conviction as above outlined.

It is the order of the court that the judgment and sentence of defendant by the district court of Kay county be modified and affirmed, as above stated.

DOYLE, P. J., and DAVENPORT, J., concur.