**STATE of Oklahoma ex rel. Paul HEART-SILL, Petitioner,**

v.

**COUNTY ELECTION BOARD OF CARTER COUNTY, State of Oklahoma, and Foster Hunt, Chairman, J. Elbert King, Secretary, and Walter Neustadt, Jr., Member of said Election Board, Defendants.**

No. 38285.

Supreme Court of Oklahoma.

June 2, 1958.

Wilson Wallace, Ardmore, and Alan B. McPheron, Durant, for petitioner.

George, George, Venters & Braver, by Harley E. Venters, Ardmore, for defendants.

BLACKBIRD, Justice.

For several years, petitioner has been one of the duly elected, qualified, and acting County Commissioners of Carter County, Oklahoma. During his present term of office, and, by a verdict filed September 20, 1957, in Cause No. 5450, entitled: "State of Oklahoma v. Paul Heartsill and Claude C. Arnold" of the District Court in said County, petitioner, and the other named defendant, were found guilty, at the trial, of criminal charges of conspiring to defraud said County, and the State; and, accordingly, each defendant was assessed punishment of one year imprisonment and a $5,000 fine. Thereafter, on November 29, 1957, said Court entered a judgment conforming to said verdict. Thereafter, upon the overruling of his motion for a new trial, and pronouncement of sentence in accord with the verdict and judgment, petitioner gave notice of appeal to this State's Criminal Court of Appeals and obtained an extension of time to perfect said appeal, as well as a stay of execution pending same, upon his filing of an appeal bond, as directed by the trial court.

During his freedom under said bond, petitioner has continued to occupy his official position as County Commissioner, in all material respects, the same as before the filing of the above-mentioned criminal charges against him.

During the regular filing period earlier this year, petitioner filed with the County Election Board of said County, an official Notification and Declaration of his candidacy for the same office in the coming primary election, next July 1st. Thereafter, a petition was filed with said Election Board protesting the filing of said Notification and Declaration, and praying that it be stricken and petitioner's name not be placed on the primary ballot, on the ground of his alleged ineligibility as such candidate, because of the above-described "conviction." Thereafter, at the hearing before said Board, the petitioner herein offered to prove by a certified copy of the verdict filed therein, that, upon the trial of certain ouster proceedings based partially upon some of the same acts which formed the basis of the above-described criminal conviction, another jury found for him and the judgment denying ouster, entered in accord with said verdict, not appealed from, has become final. The Board sustained the protestants' objection to this offer, and, at the close of the hearing, sustained the protest and ordered that petitioner's name not be permitted on the primary election ballot, on the ground that, because of having been sentenced on conviction of a felony, as aforesaid, he was not qualified to vote, and, because of such disqualification as an elector, he was also not qualified to file for "public office."

■ Thus, in petitioner's present original proceeding in this court for a writ to compel the County Election Board of Carter County, and its members, the respondents herein, to refrain from enforcing its aforesaid decision and to place his name on the ballot as a candidate for county commissioner, there is squarely presented a question of first impression in this jurisdiction, namely: Is a person, who has been convicted of a felony, and sentenced accordingly, during stay of his sentence on appeal from said conviction, disfranchised and therefore disqualified to run for nomination as a candidate for county office?

Tit. 19 O.S.1951 § 132, provides:

"No person shall be eligible to any county office unless he shall be, at the time of his election or appointment, a *qualified voter* of the county." (Emphasis ours.)

Article III, sec. 1, of the Oklahoma Constitution states, among other things, the following:

> " * * * no person adjudged *guilty of a felony,* subject to such exceptions as the legislature may prescribe * * * shall be entitled to register and vote. ‾ * * *." (Emphasis ours.)

Tit. 26 O.S.1951 § 61, which names the qualifications of electors, or voters, makes one exception, among others, to the class of persons so qualified, in the following words:

> " * * * no person *adjudged guilty of a felony* after the adoption of the Constitution of this state, subject to such exceptions as the legislature may prescribe, unless his citizenship shall have been restored in the manner provided by law; * * *." (Emphasis ours.)

It is the petitioner's position generally that he has not been "adjudged guilty" of a felony within the meaning of the above-quoted statutes and constitutional provision until, and unless, his conviction becomes final, which cannot occur as long as his present appeal is pending.

The principal case relied upon by the respondents, for their position to the contrary, is State ex rel. Olson v. Langer, 65 N.D. 68, 256 N.W. 377, which has been cited as authority for the proposition that the disqualification of a person to vote attaches immediately upon his sentence and is not suspended during his appeal. See 29 C.J.S. Elections § 33, at note 26. The Langer case did not arise, however, until 1934, whereas our Constitution was adopted in 1907, with the above-quoted provision in it. Then, and also when Tit. 26, sec. 61, supra, was, after amendment, incorporated into our Revised Laws of 1910 (as sec. 3118, thereof) from the Oklahoma Session Laws of 1907–08 (p. 341), the prevailing judicial thought, presumably within the contemplation of our legislators and those voting for adoption of the Constitution, was that the meaning of the words "adjudged guilty" was as shown by the Annotations to R.L.1910, sec.

3118, citing the note at 18 L.R.A.,N.S., 684, where the case of People v. Fabian, 192 N.Y. 443, 85 N.E. 672, is reported. There the writer of the note says:

> "But one other case, aside from People v. Fabian, has been found upon this question. In State v. Houston, 103 N.C. 383, 9 S.E. 699, the chief justice in a concurring opinion, held that, under a conditional provision which declared that 'no person who, upon conviction or confession in open court, shall be adjudged guilty of felony, or other crime infamous by the laws of this state, and hereafter committed shall be deemed an elector,' a voter does not lose his right to vote until there has been administered the appropriate punishment due to the crime imputed and ascertained by the finding of a jury, or confessed, and the cause brought to an end by a *final judgment* disposing of it; that, until this is done, and the cause fully disposed of, there has been no condemnation of the law;
>
> * * * * * *
>
> and that, therefore, the defendant found guilty of a felony by the verdict of a jury did not lose his rights as an elector while the judgment was suspended. * * *" (Emphasis ours.)

Title 51 O.S.1951 § 8, which specifies the events in which an official's office shall become vacant and which, as shown in Board of County Commissioners v. Litton, Okl., 315 P.2d 239, 242, had been in effect several years when our Constitution was adopted, specifically adopts substantially the same meaning of the word "conviction" that was prevalent at that time. See cases cited in McAlester v. State, 16 Okl.Cr. 70, 180 P. 718, and notes at 15 Ann.Cas. 103–104, and Ann.Cas.1915B, 283, 289, 290. For later cases, see Donnell v. Board of Registration of Medicine, 128 Me. 523, 149 A. 153, and other cases cited in the annotation at 113 A.L.R. 1179, 1182. Thus, the words "convicted" and "conviction" in their broad and comprehensive sense, like the expression "adjudged guilty" mean a judgment of "final condemnation." In Commonwealth

ex rel. McClenachan v. Reading, 336 Pa. 165, 6 A.2d 776, 778, in speaking of the differences in what it termed the "popular" meaning of the term "conviction" and its "legal" meaning, the court said:

"It is true that the popular rather than the legal meaning has in certain instances been adopted, but as pointed out in Commonwealth v. McDermot (No. 2), 224 Pa. 363, 365, 73 A.2d 427, 428, 24 L.R.A.,N.S., 431, this meaning has been applied *when rights other than those of the one who has been found guilty* have been before the courts. * * * Here the rights of those alleged to have committed the crimes are before the court and in neither the provisions of the Constitution nor the statute involved in this case is there any indication that the popular rather than the legal meaning 'convicted' is to be applied. Until they have been convicted as evidenced by a *final* judgment they cannot be deprived of the right to hold the offices to which they were appointed." (Emphasis ours.)

In this connection, see Ashcraft v. State, 68 Okl.Cr. 308, 98 P.2d 60, 67. Obviously a reversal of a conviction on the ground of the insufficiency of the evidence is in effect a pronouncement that ground therefor never rightly existed, and should wipe out all valid basis for disfranchisement (State v. Houston, supra) just as it withholds forfeiture of office. See Board of County Commissioners v. Litton, supra. Also, how can he who has thus been prematurely and unjustly disfranchised be compensated if he has thereby been deprived of opportunity for election to an honorable and remunerative office? In this connection, see the annotation at 106 A.L.R. 644, 646, 647.

Speaking of anomalous situations, as was done in the Langer case, it would indeed constitute such a situation, if, as allowed by Tit. 51, § 8, supra, a man could retain his office, as has Heartsill in the present case, yet be without one of the essential qualifications of an elector, and a candidate, for such office. In this connection, notice State ex rel. Murray v. Bozarth, 167 Okl. 321, 29 P.2d 579, referred to in Briggs v. Board of Commissioners of Muskogee County, 202 Okl. 684, 217 P.2d 827, 20 A.L.R.2d 727. To withhold from a man the right to vote, upon consideration of the so-called "purity of the ballot" which was relied upon so heavily in the Langer case, appears absurd when sought to be applied in this State, where the same man, notwithstanding such disqualification, may hold the same office for whose candidates, under that opinion, he would be disqualified to vote. This would place "purity of the ballot" before "purity of public office." If allowing a citizen convicted of a felony to run for office would defeat the object of our statutes and Constitution, and, under them, the "right of the individual to participate in government * * * give way to the public interest * * *", (as was said in the Langer case, to be true in North Dakota) then why is it that our Legislature has only recently authorized removal of elective officers for their acts or omissions during a previous term of office. See House Bill 1012, S.L., 1955, p. 200, Tit. 22 O.S.1955 Supp. § 1181.1; State v. Blake, 138 Okl. 241, 280 P. 833; Board of Commissioners v. Shutler, 139 Okl. 52, 281 P. 222; Annotation 138 A.L.R. 753, 756. To paraphrase and slightly modify an expression of the court in People v. Fabian, supra [192 N.Y. 443, 85 N.E. 674], we think that upon reason, as well as consideration of the weight of authority, it can hardly be contended that a man should be deprived of the right of suffrage and the privilege of running for office "by a less conclusive judicial pronouncement" than is required for forfeiture of an office. Our decision in the Litton case, supra, conforms to the principle that when "the direct consequences of fine and imprisonment are suspended or postponed temporarily * * * indefinitely * * *" or permanently, "so, also, the indirect consequences" thereof "are likewise postponed." See the discussion of the Fabian case in the annotation, 36 A.L. R.2d 1238, 1239.

 We recognize, as respondents point out, that the words "convicted" and "convic-

tion" may have different meanings for different purposes (see Ex parte White, 28 Okl.Cr. 180, 230 P. 522; Manning v. State, 7 Okl.Cr. 367, 123 P. 1029,. and the discussion in Truchon v. Toomey, 116 Cal.App.2d 736, 254 P.2d 638, 36 A.L.R.2d 1230) just as, in Board of County Commissioners v. Litton, supra, we recognized that the term "final judgment" may have different meanings for different purposes. However, we think (as the majority of courts appear to) that when the rights of one alleged to have committed a felony are before the court, and the imposition of a penalty as serious as disfranchisement is involved, the strict legal definition of such terms should be applied. As we have concluded that, under the statutes and the Constitution provision here involved, the meaning of the term "adjudged guilty" imports a final judgment or "condemnation of law", we can only hold that, pending his appeal with accompanying stay of execution, a person found guilty of a felony in the trial court is not disfranchised. It therefore follows, as respondents' argument concedes, that he is also not disqualified for running for nomination for county office; and we so hold.

■■■ The respondent Board also argues briefly that this court should not grant the writ applied for because, in sustaining the protest to petitioner's Notification and Declaration of Candidacy, it was engaged in a purely ministerial duty or exercise of executive power, citing State ex rel. Caldwell v. Vaughn, 33 Okl. 384, 125 P. 899. They say this court has many times held that a writ of prohibition is to prevent an inferior judicial tribunal from exercising, or exceeding, judicial power not possessed by it, and that such writ will be issued only in cases of necessity, and not in "doubtful" ones. While it is true that courts may not, by extraordinary writ, control a body, such as an election board, in the performance of its ministerial acts, nor ordinarily review its exercise of discretion, yet, where the act involved is quasi-judicial, rather than ministerial, and the public has an interest, or the refusal of this court to take jurisdiction would result in a practical denial of justice,

our power to grant such a writ is beyond question. See authorities cited in Yocham v. County Election Board of Creek Co., 198 Okl. 588, 180 P.2d 831. To deny a person the privilege of running for public office, or appearing on an election ballot, on the ground that he is disqualified for having been convicted of a felony, when he has not been "finally adjudged" so, is certainly, under our view, a practical denial of justice and is beyond the power granted the Board by Tit. 26 O.S.1951 § 165a, to strike a candidate's filing if "contrary to law." Accordingly, the writ sought is hereby issued, and the respondent Board is directed to vacate its previous decision and to place petitioner's name on the ballots distributed for the primary election on July 1, 1958.

WELCH, C. J., CORN, V. C. J., DAVISON, JOHNSON and JACKSON, JJ., concur.

HALLEY, WILLIAMS and CARLILE, JJ., dissent.

WILLIAMS, Justice (dissenting).

Title 19 O.S.1951 § 132, provides as follows:

"No person shall be eligible to any county office unless he shall be, at the time of his election or appointment, a qualified voter of the county."

Article III, Okla. Constitution, Sec. 1, provides as follows:

"Qualified electors of this State shall be citizens of the United States, citizens of this State, including persons of Indian descent, (native of the United States), who are over the age of twenty-one years and who have resided in the State one year, in the county six months, and in the election precinct thirty days next preceding the election at which such elector offers to vote. Provided, that no person adjudged guilty of a felony, subject to such exceptions as the legislature may prescribe, nor any person kept in a poor house at public expense, except Federal, Confederate and Spanish-American ex-

soldiers or sailors, nor any person in a public prison, nor any idiot or lunatic, shall be entitled to register and vote."

Title 26 O.S.1951 § 61, provides in part as follows:

"The qualified electors of the state shall be male citizens of the United States, male citizens of the state, and male persons of Indian descent, natives of the United States who are over the age of twenty-one years who have resided in the state one year, in the county six months, and in the election precinct thirty days next preceding the election at which any elector offers to vote. Provided, that no person adjudged guilty of a felony after the adoption of the Constitution of this state, subject to such exceptions as the Legislature may prescribe, unless his citizenship shall have been restored in the manner provided by law; nor any person while kept in a poor house or asylum at the public expense, except Federal and Confederate ex-soldiers; nor any person in the public prison, nor any idiot or lunatic, nor shall any person be allowed to vote in any election held herein, unless he is able to read and write any section of the Constitution of the State of Oklahoma * * ".

The latter statute has been, in effect, amended by Article XIX of the Constitution of the United States.

Both the Constitution and our statute, above quoted, provide that unless and as the legislature prescribes exceptions, no person adjudged guilty of a felony shall be entitled to register and vote unless his citizenship shall have been restored in the manner provided by law.

It is true that one adjudged guilty of either of certain felonies has a right of appeal and to be free upon filing and approval of a supersedeas bond and the effectiveness of his conviction is thereby and to that extent stayed.

However, until the legislature may so specifically provide, I am of the opinion that one standing under the shadow of such a conviction has been adjudged guilty of a felony to the extent of disqualifying him from voting and from holding county office under the foregoing authorities.

In 29 C.J.S. Elections § 33b, it is stated,

"When an accused is convicted, his disqualification as an elector attaches immediately, and such disqualification is not suspended by his appeal and the furnishing of a supersedeas bond." See Olson v. Langer, 65 N.D. 68, 256 N.W. 377 and 20 C.J. Elections, sec. 45, note 25 and cases there cited.

I therefore respectfully dissent.